## 12464

### STATE v. HEAVENER

#### (143 S. E., 674)

1. CRIMINAL LAW—THAT COURT, WITHOUT OBJECTION, PERMITTED SOLICITOR TO EXHIBIT PROSECUTRIX'S BABY TO JURY AND REFER TO RESEMBLANCE TO DEFENDANT, CANNOT BE CONSIDERED AS GROUND FOR NEW TRIAL OF SEDUCTION CASE.—Grounds of motion for new trial after conviction of seduction that Court erred in permitting Solicitor, during argument, to exhibit prosecutrix's baby to jury and refer to its resemblance to defendant, cannot be considered, in absence of objection to such conduct.

2. CRIMINAL LAW—CHILD OF ALLEGED SEDUCTION MAY BE EXHIBITED TO JURY TO SHOW ITS RESEMBLANCE TO DEFENDANT.—Exhibition to jury of child of alleged seduction is relevant and competent, not merely to corroborate prosecutrix's testimony that she was seduced by some one, but for purpose of showing child's resemblance to defendant, thereby corroborating her testimony that defendant seduced her.

3. SEDUCTION—PROSECUTRIX'S TESTIMONY IN SEDUCTION TRIAL MUST BE CORROBORATED.—In trial for seduction, the testimony of prosecutrix must be corroborated by other evidence.

4. CRIMINAL LAW—"EVIDENCE" IS ANY MATTER OF FACT TENDING OR DESIGNED TO PRODUCE PERSUASION OF EXISTENCE OR NONEXISTENCE OF SOME FACT.—Evidence is but any matter of fact, the effect, tendency, or design of which is to produce in the mind a persuasion of the existence or nonexistence of some matter of fact.

5. CRIMINAL LAW—OBJECTION THAT EVIDENCE DEDUCED FROM IMMATURE CHILD'S RESEMBLANCE TO ALLEGED SEDUCER IS TOO VAGUE, UNCERTAIN, AND FANCIFUL FOR SUBMISSION TO JURY GOES TO WEIGHT, RATHER THAN RELEVANCY, THEREOF.—Objection, in seduction trial, that evidence deduced from resemblance of immature child to defendant is too vague, uncertain, and fanciful to

be submitted to jury goes to the weight, rather than the relevancy, thereof.

6. CRIMINAL LAW—CHILD'S PHYSICAL RESEMBLANCE TO DEFENDANT HELD PROPER MATTER FOR JURY'S DETERMINATION IN SEDUCTION TRIAL.—In seduction trial, whether prosecutrix's child bore likeness to defendant, and its features physically corroborated prosecutrix's testimony that defendant was its father, were proper matters for the jury to determine, as are the weight and sufficiency of all other evidence.

7. CRIMINAL LAW—GENERAL RULES OF EVIDENCE ARE SAME IN CRIMINAL AND CIVIL PROCEEDINGS.—The general rules of evidence are the same in criminal as in civil proceedings.

8. WITNESSES—DEFENDANT VOLUNTARILY TESTIFYING CANNOT REFUSE TO ANSWER QUESTION ON GROUND OF INCRIMINATION ON OFFENSE CHARGED.—Defendant voluntarily becoming a witness in his own behalf cannot claim right to refuse to answer a question on ground that it would tend to incriminate him on particular offense for which he is being tried.

9. CRIMINAL LAW—THAT COURT SUSTAINED OBJECTION TO SOLICITOR'S REQUEST IN SEDUCTION TRIAL THAT DEFENDANT STEP FROM WITNESS STAND FOR COMPARISON OF CHILD'S FEATURES WITH HIS OWN ON ERRONEOUS GROUND OF RIGHT TO REFUSE TO GIVE EVIDENCE AGAINST HIMSELF DENIED HIM NO RIGHT (CONST. U. .S., AMEND. 7; CONST. S. C. 1895, ART. 1, § 25).—That Court sustained defendant's objection to Solicitor's request in seduction trial that defendant step down from witness stand and suffer comparison of child's features with his own on erroneous ground of his right to refuse to give evidence against himself did not deny him any right under Const. U. S., Amendment 7, and Const. S. C. 1895, Art. 1, § 25, especially where jury was particularly cautioned that no word or act of trial Judge could be construed as intimation of his opinion on facts.

10. SEDUCTION—PROSECUTRIX'S CHASTITY IS PRESUMED, AND SUCH PRESUMPTION WILL SUPPORT CONVICTION OF SEDUCTION, UNLESS DEFENDANT PROVES CONTRARY.—The chastity of prosecutrix is presumed in prosecution for seduction, and such presumption will support conviction, unless defendant proves that she was lewd and unchaste.

11. CRIMINAL LAW—PRESUMPTIONS OF DEFENDANT'S INNOCENCE AND PROSECUTRIX'S CHASTITY IN SEDUCTION TRIAL DO NOT NULLIFY EACH OTHER.—The burden being on defendant in seduction trial to prove that prosecutrix was lewd and, unchaste, the presumptions of innocence and chastity do not nullify each other.

Before JOHNSON, J., Greenville, March, 1926. Appeal dismissed.

H. M. Heavener, alias H. M. Marshall, was convicted of seduction, and he appeals.

The order of J. Henry Johnson, trial Judge, refusing defendant's motion for a new trial, was as follows:

After trial and conviction upon an indictment charging the statutory crime of "seduction," defendant, through his attorneys, and within due time, moved the Court for a new trial upon the grounds:

(1) That he had been "denied a fair and impartial trial as provided by the Constitution of the United States, Amendment 7, and Section 25, Article 1, Constitution of South Carolina of 1895, *on account of the use to which the child of the prosecutrix was put during the trial,* in that:

"(a) Under the law of this State, the child of the prosecutrix in a seduction case may be introduced in evidence for one purpose only, to wit, to corroborate the prosecutrix that she has been seduced, and, when the Solicitor took the baby in his arms and demanded that the defendant come down before the jury and take the child in his arms for the purpose of comparing their features and proving a physical resemblance between the two, his Honor ruled that the defendant could refuse to do so only upon the ground of his right to refuse to give evidence against himself. That this ruling was prejudicial and incorrect, and prejudiced the defendant before the jury, in that it put him in the light of refusing because of guilty knowledge. That his Honor should have ruled unequivocally that the child could not be introduced in evidence for the purpose of comparison.

"(b) His Honor erred in permitting the Solicitor in his argument, over objection of counsel for defense, to exhibit the baby to the jury and dramatically claim that the defendant was the father of the child by claiming resemblance.

"(c) His Honor erred in permitting the Solicitor in the course of his argument to take the baby in his arms and stand before the jury, using said child as an exhibit; said action being calculated to inflame the minds of the jury and prevent them from giving the defendant that fair trial guaranteed by the Constitutions of the United States and the State of South Carolina."

And (2) for alleged error of the Court in refusing to charge the jury, pursuant to defendant's sixth request to charge:

"The Court instructs the jury that it is true that the law presumes that every woman is chaste and of good repute until the contrary appears; but also does the law presume every one to be innocent of crime until he be proven guilty. *Hence we have one presumption nullifying the other,* and in criminal trials the presumption of the innocence of the accused is stronger and must prevail till it is overcome by *evidence* beyond a reasonabl doubt."

The first three grounds of the motion being presented by Mr. Price, of Bonham, Price & Poag, in a "special motion," while the last ground was argued by Mr. Bowen, all of counsel for the defense.

In order that there may be no misunderstanding about the matter, and that the record may be accurate, the Court feels constrained to state that Mr. Price was not in the Court House during the argument of the solicitor, and, upon the hearing of the motion for new trial, Mr. Bowen admitted that *no objection was made by, or on behalf of, the defendant to the conduct of the solicitor in taking the baby in his arms before the jury, or in referring to its resemblance to defendant.* Mr. Bowen further admitted in open Court, on the morning after the trial, and again at the hearing of this motion, that what actually transpired during the course of the Solicitor's argument to the jury was substantially as follows:

"Solicitor (speaking) : Mr. Foreman and gentlemen of the jury, I asked the defendant, while he was on the stand, if he would step down before you in order that I might compare the baby with him. He refused, and the Court ruled that he could not be made to do so over his objection. I then asked him if he would voluntarily do so, and he refused. I then asked him if he would take the baby in his arms where he was (on the witness stand), and he refused, the Court ruling that he could not be made to do so over his objection; whereupon I asked him if he would voluntarily do so, and he refused. Now, Mr. Foreman and gentlemen of the jury, if I were charged with a crime of this nature, and innocent of said charge, I would gladly take the child in my arms and step down here before you, Mr. Foreman, and say, 'Compare the two of us.' "

To this argument alone was objection made by the defense, acting through Mr. Bowen, and the Court ruled that, since defendant had voluntarily become a witness, it was within the limits of legitimate argument for the Solicitor comment upon his demeanor and conduct upon the stand, just as he might refer in argument to the conduct and demeanor of any other witness during his examination.

It will be observed, therefore, and borne in mind, that *none of the grounds of the motion is predicated upon the line of argument to which objection was actually made and ruled upon by the trial Judge;* and, further, that grounds (b) and (c), as I have designated them, of the special motion of Bonham, Price & Poag, are not properly before me, as the basis of a motion for new trial, unless a trial Court is bound, *even in misdemeanors,* to take from an array of able and astute counsel the right to conduct the defense of their client in their own way, to hold that neither a defendant, nor his attorneys, can waive, even in misdemeanors, any of the "rights of an accused," and to assume full responsibility for the conduct of the de-

fense of every one brought to the bar to plead to an indictment, to the end that counsel may not, in some unguarded moment of the trial Judge, waive, overlook, or fail to urge, either inadvertently or designedly, some "right" of the Court's ward.

I cannot willingly subscribe to the grafting of such a dangerous principle upon our system of jurisprudence, for, followed to its logical conclusion, it would mean that the asking of a single incompetent question by the State's attorney, unobjected to at the time by the defendant, or his counsel—whether inadvertently or designedly—could serve as the predicate for a new trial in the event of conviction; otherwise it might be argued that defendant had been convicted upon incompetent testimony, and that therefore he had not received a fair and impartial trial.

Apart from these considerations, however, I shall attempt to show, both upon principle and authority, that, *even had there been objection on behalf of the defendant,* the exhibition of the child of the alleged seduction is quite relevant and competent, not merely for the purpose of corroborating the testimony of the prosecutrix to the effect that she had been *seduced by some one*—a practice conceded by the defense, and well recognized in this jurisdiction, as evidenced by the decisions of our Court in *Rumler v. Gantt,* 121 S. C., 117; 113 S. E., 581. *State v. Teal,* 108 S. C., 455; 95 S. E., 69. *State v. Whitaker,* 103 S. C., 210; 87 S. E., 1001, Ann. Cas., 1918-E, 467, and others—but for the purpose of showing the child's resemblance to the putative father, and *thereby corroborating the testimony of the prosecutrix that the particular defendant on trial had seduced her.*

It can scarcely be questioned that, in a civil action or criminal prosecution for seduction, it is of little concern that *some one* had seduced the woman, the material issue is whether the defendant did so; and yet it is argued that the child may be offered to corroborate the

testimony of prosecutrix that *some one* had seduced her, that *some one* had intercourse with her, but not for the purpose of showing its likeness to defendant and thereby corroborating her charge that *he* was her seducer. Since the testimony of prosecutrix must be corroborated by other evidence, and since evidence is but "any matter of fact, the effect, tendency, or design of which is to produce in the mind of a persuasion, affirmative or disaffirmative, of the existence of some matter of fact." I am not impressed with the argument that the fruit of the seduction may not be exhibited to the jury for the purpose of showing its resemblance to the putative father, for the purpose of giving the jury the benefit of all evidence that may shed light upon the matter under investigation; and, if it be argued that evidence deduced from the appearance of an immature child is of too vague, uncertain, and fanciful a nature to be submitted to the consideration of a jury, the answer is that such objection goes to the weight rather than to the relevancy of such evidence.

In the instant case, the child, an infant something more than six months of age, was offered and admitted in evidence generally, and without objection on the part of the defendant, while the prosecutrix was upon the witness stand, and she was permitted, without objection, to identify it as the progeny of the defendant and herself. If it were proper for her to testify that it was the child of the defendant, why should the jury be denied the privilege of the opportunity of finding corroboration of that testimony in the child's likeness to the defendant, if such likeness existed, or of having something to predicate a reasonable doubt as to the guilt of the accused, if, in fact, there were no resemblance?

It will be borne in mind that defendant denied ever having had any intercourse whatever with prosecutrix, and whether or not her child bore likeness to defendant, and whether or not the jury could find stamped

upon its features physical corroboration of the testimony of prosecutrix, were, it occurs to me, proper matters for the determination of the jury, just as the weight and sufficiency of all other evidence was peculiarly for its consideration and determination.

A somewhat protracted investigation of precedents discloses that, in those States where conviction for seduction can be had only after, or upon, corroboration of prosecutrix's testimony, it is the settled practice to admit the child in evidence, not alone as corroborative of her testimony that *some one* had intercourse with her, that *some one* seduced her, but likewise for the purpose of showing its resemblance to the alleged seducer; and particularly is this so where defendant denies having had any intercourse whatever with the woman, since, in the first instance, physical resemblance makes for corroboration, and, in the second place, the production of a child of prosecutrix which resembles defendant reflected upon his credibility, and strengthens the testimony of prosecutrix. Such is the rule, irrespective of the age or maturity of the child, in Alabama, Arkansas, North Carolina, England and Canada. *Watts v. State,* 8 Ala. App., 264; 63 So., 18. *Tarver v. State,* 17 Ala. App., 424; 85 So., 855, though the same Court under the long-established rule in that State holds the child inadmissible for the purpose of showing resemblance when the infant was born as the result of coition at a time subsequent to that of the act relied upon as the seduction. *Adams v. State,* 93 Ark., 260; 124 S. W., 766; 137 Am. St. Rep., 87. *State v. Horton,* 100 N. C., 443; 6 S. E., 238; 6 Am. St. Rep., 613. *State v. Malonee,* 154 N. C., 200; 69 S. E., 786. *Anderson v. Auperle,* 51 Or., 556; 95 P., 330, a civil action. *Rex. v. Hughes,* 22 Ont. L. Rep., 344; 17 Can. Crim. Cas., 450; 19 Ann. Cas., 534, where it was held proper, in a prosecution for carnal knowledge of a female, to exhibit the child of prosecutrix to the jury, and

to have its resemblance to the defendant pointed out, the Court saying that such was the long-established practice both in England and Canada.

It would seem that, in those States where the child cannot be exhibited to the jury to show resemblance, it is also the practice not to permit profert for any purpose, and Iowa appears to be the only State requiring corroboration of the testimony of prosecutrix where the infant may not be offered for the purpose of showing physical likeness to the alleged seducer. While it is also held incompetent to make profert of the child for such purpose in Kentucky and Texas, it would seem that, in those States, conviction may be had upon the uncorroborated testimony of the woman; hence exhibition of the child could serve no useful purpose. See *State v. Danforth,* 48 Iowa, 43; 30 Am. Rep., 387, followed in *State v. Hunt,* 144 Iowa, 257; 122 N. W., 902. *Gleason v. State,* 77 Tex. Crim. Rep., 300; 178 S. W., 506. *Jordan v. Commonwealth,* 180 Ky., 379; 202 S. W., 896; 1 A. L. R., 617 (annotated).

Exhibition of an alleged child of defendant, for the purpose of showing resemblance, has been permitted in many other States in criminal prosecutions other than seduction, such as rape and assault, Arkansas, California, Illinois, Kansas, New Hampshire, Ohio, Oklahoma, Canada; bastardy, Utah, New Hampshire, Alabama, Arkansas, New Jersey, Ohio, Massachusetts, Mississippi, Connecticut, California.

The California Court, in *People v. Burke,* 18 Cal. App., 72; 122 P., 435, a prosecution for attempted murder of a woman and her illegitimate child by the alleged father of the latter, in answer to the contention that the child should not have been allowed in evidence for the purpose of showing resemblance to defendant, gave the following unanswerable reason for sanctioning such practice: "Family resemblance being nature's own identification, is so common and well known that there is no practical reason why the al-

leged offspring should not be exhibited to the jury in any case. * * * *The jury are the best judges on the question of similarity, and, unless it exists, a production of the offspring would be* in the defendant's favor."

And said the Massachusetts Court, in *Finnegan v. Dugan,* 14 Allen, 197: "It is a well-known physiological fact that peculiarities of feature and personal traits are often transmitted from parent to child. Taken by itself, proof of such resemblance would be insufficient to establish the paternity; but it would be clearly a circumstance to be considered, in connection with other facts tending to prove the issue on which the jury are to pass." This was a bastardy case.

See, also, *State v. Anderson,* 63 Utah, 171; 224 P., 442; 40 A. L. R., 94, annotated note, pages 97–175.

And, in the Courts of Common Pleas in South Carolina, the child may be offered to show resemblance *"in an action for seduction of plaintiff's daughter by defendant, exhibition of the daughter's child was competent to show its resemblance to the putative father,* WHICH WAS ONE OF THE FACTS IN ISSUE," quoting from syllabus of *Rumler v. Gantt,* 121 S. C., 117; 113 S. E., 581, citing *State v. Whitaker* and *State v. Teal, supra.*

Hence, unless the rules of evidence in civil actions are different from those in criminal prosecutions, the precise question has already been settled by our Court against the contention of defendant. But "the general rules of evidence are the same in criminal as in civil proceedings." *State v. Danforth,* 73 N. H., 215; 60 A., 839; 111 Am. St. Rep., 600; 6 Ann. Cas., 557. *Gaunt v. State,* 50 N. J. Law, 490; 14 A., 600.

"The sound rule is to admit the fact of similarity of specific traits, however presented, provided the child is, in the opinion of the trial Court, old enough to possess settled features or other corporal indications." 1 Wigmore on Evidence, § 166.

I am quite satisfied, therefore, that, even had there been objection on behalf of defendant, it would have been proper to exhibit the child in the instant case for the purpose of showing its likeness to defendant, as well as to permit the Solicitor to hold it before the jury that they might discern whether there was resemblance or lack of it.   And, since there was no objection, and since this was a prosecution for misdemeanor, I am of the opinion that it was not the duty of the trial Judge, *sua sponte,* to interfere.   It is true that the "rights of the accused" should be protected by the Courts, but, if there ever were a time in the history of this commonwealth when society should have protection at the hands of the Courts, as well as the "accused," it is now and, in my opinion, new trials should not be granted merely because there is a suggestion that some act of the State's attorney, unobjected to at the time, might possibly have influenced the jury to such an extent that their oaths were forgotten and their verdict rendered in passion and prejudice.   In the case at bar, the Court observed nothing that could lend the slightest color to such a fanciful presumption.

As to ground (a) of the special motion, it is only necessary to say that when the Solicitor asked defendant if he would step down off the witness stand and suffer a comparison of the child's features with his own, objection thereto was made by the defense, and sustained by the Court.   It is scarcely accurate to charge that the trial Judge ruled that defendant could refuse to do so *only upon the ground of his right to refuse to give evidence against himself,* which, of course, was unsound, since having voluntarily become a witness in his own behalf, he could not claim the right to refuse to answer a question on the ground that it would tend to incriminate him on the particular offense for which he was being tried.   When objected to, the Court sustained the objection, assigning the wrong reason therefor, but, since the objection was sus-

tained and a physical comparison of features denied, the defense succeeded in preventing what it objected to, and it can scarcely be said that any "right" of the accused was denied him merely because the Court gave the wrong reason for sustaining the position taken on behalf of, and by, the defendant. As a matter of fact, I am now inclined to the opinion that, since a child of the alleged seducer may be offered for the purpose of showing physical likeness to him, it would have been proper to overrule the objection of defense counsel on this point, if the ruling of the Court could have been enforced without prejudicing the defendant by the threat of a citation for contempt, had he refused to obey the ruling. To grant a new trial in this case because the wrong ruling was assigned in sustaining defendant's objection to the effort of the State to effect a "close up" comparison of the features of the child and the defendant, and, perchance, thereby the Court might have prejudiced his defense before the jury and caused them to convict him for that reason, in total disregard of their oaths, would, it occurs to me, mark the extreme in preserving inviolate the technical rights of an accused.

Moreover, the jury was specifically instructed by the trial Court that they were the sole judges of the facts in issue, and they were *particularly cautioned that no word or act of the trial Judge, at any time during the progress of the trial, could be construed by them as an intimation of his opinion upon the facts of the case.*

As to the alleged error of the Court in refusing to charge defendant's sixth request to charge to the effect that the *"presumption of innocence"* and the *"presumption of chastity" nullified each other,* suffice it to say that, ever since the decision in *State v. Turner,* 82 S. C., 278; 64 S. E., 424; 17 Ann. Cas., 88, the chastity of the prosecutrix has been presumed in prosecutions for seduction, and, in conformity with the statute, where the other elements of the offense are made out, *the burden is upon*

*defendant to prove on the trial that the woman was lewd and unchaste.* It is unquestionably the law of this jurisdiction, since the decision in *State v. Turner,* that if the State prove the other elements of the offense, the "presumption of chastity" will support a conviction, UNLESS THE DEFENDANT PROVE THE PROSECUTRIX TO BE LEWD AND UNCHASTE. Hence, that decision is necessarily authority for the position that the two presumptions do not nullify each other. If they did, then the State would necessarily be required to establish chastity by evidence which is not the rule here. If the presumption of innocence "nullified" the presumption of chastity, there would be no presumption of chastity, because the former presumption attaches to defendant as soon as he is indicted. Moreover, if "we have one presumption nullifying the other," to quote the exact language of the request, then we have no presumption of innocence, since the presumption of chastity has destroyed it, which is, of course, unsound.

It is, therefore, ordered that the motion be, and the same is hereby, refused.

*Messrs. Price & Poag,* and *Bowen & Bryson,* for appellant, cite: *Error not to consider question because timely objection was not made:* 124 S. E., 81. *Admission of child as evidence of resemblance error:* 108 S. C., 455; 1 A. L. R., 617; 52 L. R. A., 500; 65 Pac., 494. *Prejudicial to comment along this line:* 24 N. W., 489; 36 Pac., 29; 202 S. W., 896; 122 N. W., 902. *Evidence allowed for a particular purpose can be used only for that purpose:* 31 So., 809; 14 Am. Crim. Rep., 1. *Where defendant refuses to incriminate himself, prosecuting attorney has no right to comment upon this as evidence of guilt:* 46 S. W., 537; 106 N. W., 332. *Innocence of accused presumed until clearly proved otherwise:* 16 S. W., 511; 17 Ann. Cas., 91; 39 Am. Rep., 610.

*Messrs. Craig & Keith* also for appellant.

*Solicitor J. G. Leatherwood,* and *Mr. W. C. Mann* for respondent.

June 12, 1928.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The appellant was convicted in the Court of General Sessions of Greenville County for the crime of seduction under the promise of marriage. The appeal here raises the identical questions which were raised by the appellant on his motion for a new trial. The order of the trial Judge, Hon. J. Henry Johnson, refusing the motion for a new trial, correctly disposes of all the questions raised on that motion, and, in our opinion, it also decides all the questions raised by the exceptions before this Court. The order of Judge Johnson, which will be reported, is adopted as the opinion of this Court.

The judgment of this Court is that the appeal be, and the same is hereby, dismissed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : The defendant was tried and convicted in the Court of General Sessions of Greenville County, to which the venue had been changed from Pickens County, of the crime of seduction, under Section 382 of the Criminal Code of 1922, and sentenced to imprisonment at hard labor in the State penitentiary for a period of not less than two nor more than four years. From this judgment and sentence the defendant has appealed.

The questions raised by the exceptions, omitting certain minor ones, may be thus stated:

(1) Upon a trial for seduction, under the statute, should the State be permitted to introduce the child, alleged to have

been the offspring of the seduction, in evidence, as corroborating the testimony of the woman upon whom the seduction is charged?

(2) Upon such trial, should the State be permitted to introduce the child in evidence, for the purpose of establishing a resemblance of the child to the defendant as the putative father?

1. *As to the Introduction of the Child as Corroborative of the Woman's Testimony.*—It appears that this Court, in earlier decisions, has inclined to hold that the profert of the child, as evidence corroborative of the woman's testimony, is permissible, although as shall be shown, the point has not squarely arisen or been decided. The authorities generally are divided upon the proposition. The statute was not passed until 1905 and the cases construing are very few. *State v. Whitaker,* 103 S. C., 210; 87 S. E., 1001; Ann. Cas., 1918-E, 467. *State v. Teal,* 108 S. C., 455; 95 S. E., 69. *Rumbler v. Gantt,* 121 S. C., 117; 113 S. E., 581. *State v. Heath,* 133 S. C., 147; 130 S. E., 513.

In the *Whitaker case,* the question did not arise, and was not decided. The Court simply stated that the *birth of a child* was a corroborative circumstance to the testimony of the woman, along with other much stronger circumstances of corroboration.

In the *Teal case* the child was not exhibited to the jury. The Court admitted it to show that the woman had given birth to a child, which could as easily have been established without the profert of the child. It was distinctly stated that the child was not admitted to show "similarity" (resemblance?). The Court said: "The action of the Court was clearly within the ruling in *State v. Whitaker*"—that is, simply to show the birth of a child.

The case of *Rumler v. Gantt* was a civil action for damages, *per quod servitium amisit,* which would of course lie,

regardless of the deceit which is the basis of the statutory crime of seduction.

The case of *State v. Heath* was decided upon the authority of the preceding cases; other circumstances of corroboration were adverted to. The birth of the child was discussed, not the profert of it.

The statutory offense consists of two distinct elements: (1) Sexual intercourse; (2) induced by a deceitful promise of marriage. The pregnancy of the woman or the birth of a child is conclusive evidence, of course, of carnal knowledge *by some man,* and is admissible as simply a link in the chain of other circumstances relied upon to fasten the act upon the defendant, the act of carnal knowledge, one element in the offense; not at all of the other element, the inducement by a deceitful promise of marriage.

The fact of pregnancy is not an element in the offense. It may be as complete without as with it, though the probability of complaint when it·does not follow is, in the nature of the case, extremely remote; nor is it at all evidence of the deceitful promise, for it may ensue without as well as with it; the probabilities are that it follows oftener without than with.

While the pregnancy of the woman or the birth of a child is corroborative of the fact of carnal knowledge by some one, and in connection with other circumstances may fasten upon the defendant complicity in the act, there is no difficulty in establishing the fact by other evidence than the dramatic profert of the victim of unbridled passion, and, in view of the great danger of improperly stirring the natural indignation of the jury and leading it away from the vital issue in the case, the deceitful promise of marriage, upon which·the coming of the child has absolutely no bearing, we think that the safer and fairer method is to establish the fact by other evidence than the profert of the child.

*2. As to the Introduction of the Child for the Purpose of Establishing a Resemblance of the Child to the Defendant.—* It is worthy of observation that the *Teal case* was tried by one of the ablest of the Circuit Judges of this State, the Honorable Mendel L. Smith. In the report of that case this appears, in the order of the learned Circuit Judge refusing a motion for a new trial:

"The baby was not exhibited to the jury; on the contrary, the Court only admitted that to show that she had given birth to a child; it was not to show similarity" (resemblance?).

This Court said:

"The action of the Court was clearly within the ruling in *State v. Whitaker.*"

It would be difficult to find a clearer affirmation of the rule laid down by the Circuit Judge, that the child can be admitted only for the purpose of establishing the birth of a child. And to emphasize the principle, the Court adds:

"In the cases cited by the appellant the child was exhibited to prove that it had the features of the alleged father; and the Courts of Wisconsin held that relationship could not be shown in that way."

The issue in cases under the statute against seduction is robbing a woman of her virtue by means of deception and promise of marriage. It is not whether the defendant is the father of the child, a fact which resemblance tends to establish. The point is that the evidence of resemblance adds not a feather's weight in establishing the crux of the offense, that the defendant deceived the woman into surrendering her body to his embraces, by his promise to marry her. He might upon the stand admit that he was the father of the child as the result of his illegitimate intercourse, and yet the Court would be as far from deciding the real issue in the case with that admission as without it. That fact may be true whether the defendant received the

favor of the woman under a promise of marriage or as the result of passionate contact and reckless abandon of the consequences.

The point becomes apparent in considering the distinction between seduction and bastardy. In bastardy, the paternity of the child is the issue in the case, and its resemblance to the father, as the stamp of nature, tends to establish that fact in issue. In seduction, it is a negligible factor, as it tends to prove nothing of the charge.

It is not only irrelevant to the main issue, but is of tremendous effect upon the mind of the jury which substitutes sympathy for the "one more unfortunate" for evidence of the defendant's deception.

The defendant is not under indictment for adultery, which he may admit without subjecting himself to the drastic terms of the seduction statute. It seems to me that the evidence of resemblance, of such doubtful character even of the paternity of the child and excluded by many Courts of most respectful authority, should not be received to prove the fact of paternity which itself has no probative value whatever in establishing the gravamen of the offense —deception.

The observations of the New York Court in *People v. Kearney,* 110 N. Y., 188; 17 N. E., 736, are strikingly apposite:

"That the evidence in this case, of the nature herein commented on, was of a very dangerous and probably highly injurious character and tendency, we think admits of no controversy. The crime is a most atrocious one, and one which must naturally tend to enlist the sympathies of all men, and, of course, of jurors, in favor of the victim. In such cases, while administering the law with perfect fairness, Courts must be extremely careful that no evidence of a tendency to excite or influence the resentment of jurors, and which does not tend to support the evidence of the prosecutrix or to connect the defendant with the

commission of the crime, should be permitted to go to the jury."

I think the circumstances of this trial show the damaging possibilities of the admission of such evidence—pushing the child into the arms of the defendant, from which he was relieved only by claiming a constitutional privilege which was the subject of derisive comment, parading with dramatic effect before the jury with the infant in the arms of the State's prosecutor; commenting on its resemblance to the defendant. It is impossible to doubt that the jury was led away from the main questions in the case and to believe that the defendant's guilt of the charge was to be determined by their finding as to the paternity of the child.

Under the express terms of the statute, "no conviction shall be had under this section on the uncorroborated testimony of the woman upon whom the seduction is charged."

The testimony of the woman in this case was as to both elements, the intercourse and the deceitful promise of marriage. *There must be corroboration of both;* and, while the birth of the child is the weakest kind of corroboration that the defendant was a party to that act, and even if the resemblance of the child to the defendant was conclusive of his paternity, or if the defendant had admitted upon the witness stand that he was the father of the child, such evidence, so easily compatible with the contrary probability, afforded not the slightest corroboration of the deceitful promise.

In the case of *Russell v. State,* 77 Neb., 519; 110 N. W., 380; 15 Ann. Cas., 222, the Court said:

"No doubt this provision of the statute [referring to corroboration] relates *both to the act of intercourse and the promise of marriage.* The existence of one of these facts does not tend to prove the existence of the other so as to furnish the corroboration required by the statute."

3. *As to the Conduct of the Solicitor.*—The appellant complains that the Solicitor was allowed to take the baby

in his arms and stand before the jury, using the child as an exhibit, upon the ground that such action was calculated to inflame the minds of the jury against the defendant.   If the evidence was admissible, the use of it by the Solicitor was legitimate; such use, however, calculated as complained of, is a cogent argument against its admissibility as has been suggested.

4. *As to the Fifth Exception.*—It is elementary law that the exercise of a constitutional right cannot be made the subject of comment by the State's prosecuting officer.   This exception is sustained.

The judgment of this Court should be that the judgment be reversed and the case remanded for a new trial.