528 S.E.2d 430

**The STATE, Respondent,**

v.

**Hiszerchi STOKES, Appellant.**

**No. 3117.**

Court of Appeals of South Carolina.

Heard Nov. 3, 1999.

Decided Feb. 14, 2000.

---

Assistant Appellant Defender Melissa J. Reed Kimbrough, of S.C. Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Deputy Attorney General G. Robert DeLoach, III, all of Columbia; and Solicitor Walter M. Bailey, Jr., of Summerville, for respondent.

PER CURIAM:

Hiszerchi Stokes was convicted of Assault and Battery of a High and Aggravated Nature (ABHAN) committed upon the two-year-old son of his live-in girlfriend. On appeal, Stokes asserts the following errors require reversal: (1) refusal of his *Batson*[1] motion; (2) allowing the State to exhibit the child victim to the jury at the conclusion of the evidence; (3) exclusion of impeachment evidence; and (4) the failure to charge mere presence. We reverse and remand for a new trial.

## FACTUAL/PROCEDURAL HISTORY

Stokes and Deshawn Shivers lived together in a mobile home with Shivers' two-year-old son. On December 28, 1996, Stokes and Shivers argued until Shivers left the mobile home without her son and walked to her grandmother's nearby residence. Shivers returned several minutes later to retrieve her son, but Stokes refused to let her re-enter to get the child. She called the police for help.

When two sheriff's deputies arrived and knocked on the front door, Stokes came to the door and spoke with them. According to the deputies, Stokes first asked to speak to an Orangeburg City police detective, and then stated to the deputies: "[Y]ou might as well go ahead and arrest me. I've hurt him." Shivers then ran unaccompanied into the trailer, returning shortly thereafter holding her son. Her son had an

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

electrical cord wrapped around his neck, and Shivers claimed she found the child unconscious under a bed in the back bedroom. The child was limp, gasping for air and foaming at the mouth and nose. There were marks on the child's neck which were consistent with strangulation. Fortunately, the child fully recovered from his injuries.

Stokes was charged with Assault and Battery with Intent to Kill (ABIK), and was convicted of the lesser-included offense of ABHAN. He was sentenced to ten years imprisonment.

## LAW/ANALYSIS

### I. Victim as an Exhibit

■ Stokes argues the trial court erred in allowing the State to introduce the child as an exhibit because the demonstration had no evidentiary value and was highly inflammatory and prejudicial. We agree.

The defense asked the court not to allow the State to exhibit the child to the jury. The State conceded the child had no marks, and that they did not seek to demonstrate anything about the child for evidentiary purposes. The State asserted two bases for exhibiting the child to the jury. First, they desired to introduce the child, "just to show that the child is just a fine child. He's a beautiful little boy." Second, they asserted that the child had a right to be present as a victim.[2]

₃ The court ultimately ruled that the child could be "introduced" as an exhibit, and brought before the jury, "for the purpose of showing intent, if any."

At the conclusion of the evidence, the court allowed the assistant solicitor to "mark" the child as an exhibit, and then carry him before the jury, while the trial judge introduced him by saying "That's the young fellow all of the talk is about.... He won't be in your jury room, but the State asked to use him as an exhibit...."

On appeal, Stokes argues that showing the child in this way to the jury, especially at the conclusion of the evidence, improperly invoked sympathy for the child in the minds of the

---

2. The State does not assert this argument on appeal.

jury and unduly prejudiced the jury against him as the alleged perpetrator, while serving no legitimate evidentiary purpose.

The display of a person or body part to the jury in criminal cases as demonstrative evidence is not unusual where it tends to establish a fact in controversy. *See* 29A Am.Jur.2d *Evidence* §§ 950–56 (Supp.1998). For many years, exhibiting an infant was employed in South Carolina and other jurisdictions as a means of comparing features in an attempt to prove paternity, or to establish the child as a product of unlawful seduction. *See State v. Heavener,* 146 S.C. 138, 143 S.E. 674 (1928). In such instances, the child is said to have been placed in evidence. *See Id.* The same legal safeguards are thus invoked as with other evidence; including the requirement as to relevance. *See Id.*

 The trial judge has broad discretion in ruling on questions regarding the relevancy of evidence, and his decision will be reversed only if there is a clear abuse of discretion. *State v. Cooney,* 320 S.C. 107, 463 S.E.2d 597 (1995). Evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears. *State v. Schmidt,* 288 S.C. 301, 342 S.E.2d 401 (1986); *See* Rule 401, SCRE. On the other hand, evidence "should be excluded if it is calculated to arouse the sympathy or prejudice of the jury or is irrelevant or unnecessary to substantiate the facts." *State v. Langley,* 334 S.C. 643, 647, 515 S.E.2d 98, 100 (1999). Even if the evidence is not relevant, its admission may constitute harmless error if the irrelevant evidence did not affect the outcome of the trial. *See State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991).

In the present case, there was no question about the size or physical capability of the victim. He was only two years old at the time of the assault, and three years of age at trial. The State conceded that the victim had no injuries or marks at the time of trial. Furthermore, photographs of the victim taken at the time of the alleged assault were introduced in the State's case, clearly identifying the child to the jury, depicting the size and features of the child, and showing the injuries on his chest and neck.

The State argues on appeal that the viewing of the child at trial was relevant on the issue of Stokes' intent because it

allowed the jury to compare the healthy victim displayed at trial with the injured victim as shown in the photographs, thus providing a basis for assessing the extent of his injuries. This argument fails, however, because the photographs clearly depict the injuries, none of which were contested. Furthermore, there is absolutely no evidence that the child suffered from any birthmarks or other markings which might alter the appearance of the wounds. Consequently, we find this argument to be without merit. *See State v. Livingston,* 327 S.C. 17, 488 S.E.2d 313 (1997).[3] We conclude exhibiting the child to the jury at the conclusion of the evidence had no direct bearing upon, nor did it tend to establish or make more or less probable any matter in controversy.

■ The State next argues that the display of the child was cumulative to the photographs which were properly admitted, and any error was harmless. *See Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991) (finding that even if the evidence is not relevant, its admission may constitute harmless error if the irrelevant evidence did not affect the outcome of the trial). We disagree with the State on this point. We are unable to say that the error could not have affected the outcome under the circumstances of this case.

■ The allegations against Stokes are most egregious, and quite naturally they evoke great sympathy for the victim, who is both blameless and defenseless. It would be unreasonable to assume that no prejudice occurred merely because viewing the child was cumulative to the photographs. In reality, exhibiting the child to the jury is more likely to elicit from the jury an enduring sympathetic response for the helpless victim and a corresponding resentment for the accused. Where such is likely to occur,

> "[C]ourts must be extremely careful that no evidence of a tendency to excite or influence the resentment of jurors,

---

3. In *Livingston,* the deceased's husband testified, during the Felony D.U.I. trial, about his marriage to the 22–year–old victim two months before the fatal collision with accused. His testimony included a short recitation of their move to Beaufort and commencement of work. The court noted this poignant image was irrelevant to the contested issues in the case because the identity of the victim and the time and place of the accident were not disputed. The court found the testimony to be highly inflammatory, thus mandating reversal.

and which does not tend to support the evidence ... or to connect the defendant with the commission of the crime, should be permitted to go to the jury."

*People v. Kearney,* 110 N.Y. 188, 17 N.E. 736, 738 (1888); *See Livingston,* 327 S.C. at 17, 488 S.E.2d at 313; *see also Langley,* 334 S.C. 643, 515 S.E.2d 98 (1999) (finding evidence should be excluded if it is calculated to arouse the sympathy or prejudice of the jury or is irrelevant or unnecessary to substantiate the facts).

In this case guilt was hotly contested. Shivers had the same access to the child on the day of the assault as Stokes, and Stokes attempted to place the blame on her. Conversely, much of the State's evidence of guilt depended upon Shivers's credibility, which was called into question by her pre-trial conduct.

Stokes testified, and denied that he made the inculpatory statements attributed to him by the deputies. Under Stokes's version of events, he and Shivers had argued since Shivers tried to get fertility pills from her doctor on the previous day. Stokes claimed the parties were arguing because Shivers wanted to conceive a child, whereas he wanted to complete his college education. Stokes testified Shivers became hysterical and began hitting him. She called the child to the back of the home, where she remained for about five or ten minutes. She then announced she was going to the mailbox and left through the back door while he remained in the front of the home, watching T.V. Stokes denied knowing the child was still in the mobile home after Shivers left. According to Stokes, he did not see her leave, and assumed the child was with her because it was so quiet in the home.

When Shivers ultimately ran into the home to retrieve her son after the deputies arrived, she stated she found him unconscious under a bed in the back bedroom. According to deputies, she returned to the front door carrying the child less than forty seconds later. Photographs of the interior revealed that the bedroom was disheveled, with clothes strewn all around, arguably making discovery of what lay under the bed more difficult. Stokes argued at trial that the short amount of

time within which Shivers found the unconscious child and returned to the front of the home inferred that she already knew where the child was located, and that she was the assailant.

Stokes's theory of Shivers's culpability is further advanced by Shivers's conduct after Stokes was arrested. Shivers claimed her actions during and after this incident were motivated by her fear of Stokes. In contrast to this testimony, Stokes introduced nude photographs of Shivers which she admitted giving to him after his arrest. She included notes on the back indicating the photos were of her breast and stomach, because she carried his child. She also sent him various letters and poems indicating her affection for him, and her remorse for "telling a lie on him." One letter referred to Stokes as her "favorable husband," and contained the phrase "free the innocent." Somewhat in conflict with her professed fear of Stokes, Shivers admitted continuing to cultivate her relationship with Stokes. She attempted to explain this as a subterfuge in order to remain close to Stokes so that she could find out why he had hurt her child. Most telling, however, is a document written by Shivers entitled "True confession about 12–28–96," the date of this incident. In this document Shivers recanted her earlier version of events, exculpating Stokes completely, and concluding with the following statement: "Mr. Stokes did not have any knowledge about this incident that occurred and I plea [sic] the 5[th]."

Viewing the two diametrically opposed versions of the events, either one of which is plausible, and considering that each version depends in large part upon the credibility of Shivers and Stokes, we conclude that there is a real possibility the exhibition of the child victim at the conclusion of the evidence interjected an improper influence on the jury affecting the outcome. The evidence of Stokes' guilt is far from overwhelming. Accordingly, the error was not harmless, and requires reversal. *See Livingston*, 327 S.C. 17, 488 S.E.2d 313 (1997); *See also Langley*, 334 S.C. 643, 515 S.E.2d 98 (1999) (holding where evidence of murder defendant's guilt was not overwhelming, admission of irrelevant evidence was reversible error).

## II. Excluded Impeachment Evidence

██ At trial, Stokes sought to impeach Shivers by showing that she presently was charged with Assault and Battery with Intent to Kill involving an unrelated incident and that Stokes had obtained a restraining order against her. He contends the trial court's exclusion of this impeachment evidence constitute reversible error.. However, the record reflects that this issue was only raised and ruled on *in limine*. Stokes never raised the issue again at any time during the trial. Merely raising an argument in *limine* does not preserve the issue for appellate review. *See State v. Schumpert*, 312. S.C. 502, 435 S.E.2d 859 (1993). Since this issue is not preserved, we decline to reach the merits of the argument.[4]

## III. Mere Presence Charge

██ Next Stokes asserts the trial court erroneously refused his request to give the jury a mere presence charge. Because this issue may arise again on re-trial, we will address it.

 The law to be charged in a case is determined by the evidence presented at trial. *State v. Dennis*, 321 S.C. 413, 468 S.E.2d 674 (Ct.App.1996). If the evidence supports it, the defendant is entitled to a mere presence charge. *State v. Franklin*, 299 S.C. 133, 382 S.E.2d 911 (1989). Generally, a mere presence charge is appropriate under two circumstances. First, if there is a doubt over whether the defendant is guilty as an accomplice to a crime, the trial court may be required to instruct the jury that mere presence at the scene is insufficient to find the defendant guilty as an aider or abettor. *Dennis*, 321 S.C. at 413, 468 S.E.2d at 674. Second, in cases where the defendant is charged with possession of contraband as a result of being present where contraband was found, the court may be required to charge the jury that the defendant cannot be found guilty of possession of contraband by being merely present near it. *Id.*

---

4. Stokes' appellate counsel conceded during oral argument that this issue had not been preserved for appeal and was not properly before this Court.

The State did not attempt to convict Stokes on any theory of accomplice liability. Under the State's view of the evidence, Stokes was the sole person present and committed the assault himself. Conversely, Stokes maintained he was not present at the commission of the assault upon the child. Consequently, there was no view of the evidence which would support a charge on mere presence, and the trial judge correctly rejected the requested instruction. *See State v. Lee,* 298 S.C. 362, 380 S.E.2d 834 (1989).[5] Furthermore, the trial judge's charge properly instructed that to find Stokes guilty, the jury was required to find beyond a reasonable doubt that he committed the assault upon the victim.

## IV. *Batson* Issue

Lastly, Stokes appeals the trial court's ruling on his challenge to the State's discriminatory exercise of its jury strikes. Because this issue is unlikely to arise upon retrial, we decline to address it.

For the foregoing reasons, the conviction for Assault and Battery of a High and Aggravated Nature is REVERSED, and the case is REMANDED for a new trial on the lesser included offense of Assault and Battery of a High and Aggravated Nature.[6]

**REVERSED and REMANDED.**

CURETON, HEARN and HOWARD, JJ., concur.

---

5. In *Lee,* the State produced evidence that tended to show defendant exercised actual possession and control over cocaine. The defendant then presented evidence that the officers knew he was not involved and were framing him, not that he just happened by when someone dropped a bag of cocaine or that he was standing by while others used or possessed cocaine. The court held that the evidence presented at trial did not support a "mere presence" instruction.

6. Since Stokes was acquitted by the jury of ABIK, double jeopardy bars a retrial on this charge. *See State v. Owens,* 309 S.C. 402, 424 S.E.2d 473 (1992).