STATE OF NORTH CAROLINA v. SHAWN DELL KEMP

STATE OF NORTH CAROLINA v. EDWARD EARL McDOWELL

No. COA01-1345

(Filed 1 October 2002)

**1. Conspiracy— armed robbery—evidence sufficient**

There was sufficient evidence to deny defendant's motion to dismiss a charge of conspiracy to commit armed robbery where defendant was present when "everyone agreed" to the conspiracy, rode with the others to and from the victim's house, and received a portion of the money and the drugs taken during the robbery.

**2. Criminal Law— armed robbery prosecution—shooting victim allowed in courtroom—injuries apparent—no cross-examination**

The trial court did not err by not excluding a shooting victim from the courtroom during a robbery prosecution where defendant contended that the jury could simply look at the victim to determine the extent of his injuries without defendant being able to cross-examine the victim. The presence of the victim in the courtroom did not constitute the presentation of evidence or its functional equivalent, the victim's presence is not reflected in testimony or in the record, there is no indication that the State attempted to use the victim's presence for evidentiary purposes, there is no indication that the jury based its decision on its observation of the victim, there was testimony that the victim could not speak but could communicate non-verbally, and defendant could have called the victim as a witness.

**3. Criminal Law— victim's rights—presence in courtroom—exercise of rights by guardian**

The trial court did not incorrectly interpret the Crime Victim's Rights Act, N.C.G.S. § 15A-830, in refusing to exclude a shooting victim from the courtroom. The Act was designed to safeguard the rights of victims as they confront the accused through the legal process and the guardianship provision should be viewed as supplemental to the victim's rights rather than as being in competition with the victim's rights.

**4. Conspiracy— armed robbery—inducement of others—sentence enhanced**

The trial court did not abuse its discretion by imposing an aggravated sentence for conspiracy to commit armed robbery based on inducement where defendant initiated the idea of robbing the victim, defendant's inducement of others to join in the offense preceded the formation of the actual conspiracy, and inducement of others is not an element of the conspiracy.

**5. Firearms and Other Weapons— possession by felon—inducement of others—sentence enhanced**

The trial court did not abuse its discretion by imposing an aggravated sentence for possession of a firearm by a felon based on inducement where defendant initiated the idea of a robbery, convinced others to participate, and obtained a firearm

STATE v. KEMP

[153 N.C. App. 231 (2002)]

from one of the conspirators, who also provided a gun to another conspirator.

**6. Sentencing— armed robbery—mitigating factor—support system in community—evidence insufficient**

The trial court did not abuse its discretion when sentencing defendant McDowell for conspiracy to commit armed robbery, armed robbery, and possession of a firearm by a felon by not finding the mitigating factor that defendant has a strong support system in the community. A large family in the community and the support of that family is not sufficient by itself to demonstrate the separate mitigating factor of a community support system, and one witness' conclusory testimony as to the existence of a support structure is not sufficient to clearly establish the factor.

Appeal by defendants from judgments entered 3 April 2001 by Judge Gregory A. Weeks in Superior Court, Bladen County. Heard in the Court of Appeals 14 August 2002.

*Attorney General Roy Cooper, by Brian L. Blankenship, Assistant Attorney General, for the State.*

*Attorney General Roy Cooper, by John J. Aldridge, III, Special Deputy Attorney General, for the State.*

*Paul Pooley for defendant Shawn Dell Kemp.*

*Appellate Defender Staples Hughes, by Constance E. Widenhouse, Assistant Appellate Defender, for defendant Edward Earl McDowell.*

McGEE, Judge.

Shawn Dell Kemp (Kemp) was indicted on 19 January 2000 for conspiracy to commit armed robbery with a dangerous weapon. Edward Earl McDowell, Jr. (McDowell) was indicted 6 December 1999 for conspiracy to commit robbery with a dangerous weapon, robbery with a dangerous weapon, and possession of a firearm by a convicted felon. The evidence presented by the State at trial tended to show the following.

Sammie Ripley (Ripley) testified that defendants Kemp and McDowell, along with Timothy Rhodes (Rhodes), Antoine Barr (Barr), and Ripley were on the porch of Kemp's mother's house on the

**STATE v. KEMP**

[153 N.C. App. 231 (2002)]

morning of 3 August 1999. The topic of robbery was raised in the conversation and McDowell suggested they rob Felix Gillespie (Gillespie), whom McDowell had purchased drugs from the previous day. Kemp did not verbally respond to McDowell's statement, but Ripley testified that "everyone agreed to it."

Kemp, McDowell, Ripley, and Rhodes got into McDowell's car and drove to Gillespie's house. After finding that Gillespie was not at home, the four men drank beer while waiting at a friend's house across the road. The group returned to McDowell's car and circled the block. Rhodes said Kemp and Ripley would enter Gillespie's house and rob him, but Kemp stated that Gillespie knew him. McDowell then agreed to enter the house instead of Kemp. Kemp and Rhodes remained in the vehicle while Ripley and McDowell forced their way into the trailer where Gillespie was staying.

Ripley pointed a gun at Gillespie and ordered him to lie on the floor. McDowell placed a gun to the head of Brandon Williams (Williams), Gillespie's son. Ripley took Gillespie's wallet and then walked him into the back room in search of crack cocaine. Gillespie gave Ripley a bag containing the drugs. Gillespie heard a gunshot from another room in the trailer. A struggle ensued between Ripley and Gillespie during which Gillespie was shot in the shoulder. Ripley ran back through the trailer and exited with Gillespie in pursuit. They saw Williams lying face down on the floor with a puddle of blood in his back. Gillespie fired several shots at Ripley as they ran out of the trailer.

McDowell and Ripley flagged down the car being driven by Rhodes with Kemp as a passenger. The group returned to Kemp's mother's house and divided the money and drugs. Kemp received a portion of the drugs and a twenty dollar bill taken from Gillespie's wallet. McDowell received a portion of the money and the drugs.

Williams' mother testified that prior to her son being shot, he was an honor student, played football, and planned to attend college. He is now permanently unable to walk, uses a feeding tube, and requires twenty-four hour nursing care. She testified he can no longer speak but communicates by smiling, blinking, or raising his legs.

Kemp moved to dismiss the charges against him at the close of the State's evidence, which was denied by the trial court. Defendants did not present evidence. Kemp renewed his motion to dismiss the

charges, which was again denied by the trial court. The jury found Kemp guilty of conspiracy to commit armed robbery and the trial court sentenced him to a minimum of twenty months and a maximum of thirty-three months in prison. McDowell moved to dismiss the charges against him at the close of all the evidence, which was denied by the trial court. The jury found McDowell guilty of conspiracy to commit robbery with a firearm, robbery with a firearm, and possession of a firearm by a convicted felon. The trial court sentenced McDowell to a minimum of forty-six months and a maximum of sixty-five months in prison for conspiracy to commit robbery with a firearm, a minimum of 117 months and a maximum of 150 months in prison for robbery with a firearm, and a minimum of twenty months and a maximum of twenty-four months in prison for possession of a firearm by a convicted felon. Both defendants appeal and we separately address their arguments.

## I. Shawn Dell Kemp

[1] Kemp argues that the trial court erred in denying his motions to dismiss the charges at the close of the State's evidence and at the close of all the evidence. Kemp contends that evidence of his participation in the conspiracy to commit armed robbery was legally insufficient to support the charge.

Upon review of a denial of a motion to dismiss, we must determine "whether there is substantial evidence: 1) of each essential element of the offense charged . . . and 2) of defendant's being the perpetrator of the offense. If each of these requirements are satisfied, the motion is properly denied." *State v. Richardson*, 308 N.C. 470, 474, 302 S.E.2d 799, 802 (1983); *see also State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990); *State v. Duncan*, 136 N.C. App. 515, 520, 524 S.E.2d 808, 811 (2000). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). All evidence is to be viewed in a light most favorable to the State and the State must have the benefit of all reasonable inferences from the evidence. *See State v. Baker*, 338 N.C. 526, 558, 451 S.E.2d 574, 593 (1994).

"A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner. In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understand-

ing will suffice." *State v. Morgan*, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (citations omitted); *see also State v. Martinez*, 149 N.C. App. 553, 561 S.E.2d 528 (2002). This evidence may be circumstantial or inferred from the defendant's behavior. *See State v. Choppy*, 141 N.C. App. 32, 39, 539 S.E.2d 44, 49 (2000), *disc. review denied*, 353 N.C. 384, 547 S.E.2d 817 (2001). The crime of conspiracy does not require an overt act for its completion; the agreement itself is the crime. *State v. Bindyke*, 288 N.C. 608, 616, 220 S.E.2d 521, 526 (1975). "Ordinarily the existence of a conspiracy is a jury question." *State v. Gary*, 78 N.C. App. 29, 35, 337 S.E.2d 70, 74 (1985), *disc. review denied*, 316 N.C. 197, 341 S.E.2d 586 (1986).

In the case before us, Kemp concedes that the State presented sufficient evidence to withstand a motion to dismiss regarding the existence of a conspiracy. However, Kemp argues that the evidence was insufficient to demonstrate that he was a member of that conspiracy.

The evidence presented at trial showed that Kemp was present when the idea to rob Gillespie was presented to the group by McDowell on the porch of Kemp's mother's house. Ripley further testified that "everybody agreed to it." After the agreement was reached, Kemp got into the vehicle with the others and rode to Gillespie's house.

Trial testimony further showed that Rhodes instructed Kemp and Ripley to enter the house and rob Gillespie. Rather than denying a role in the conspiracy, Kemp stated that Gillespie knew him and therefore he could not enter the trailer. Kemp remained in the vehicle with Rhodes and waited for McDowell and Ripley, picking them up after the robbery. Kemp also received twenty dollars taken from Gillespie's wallet, along with a portion of the drugs, after the robbery was completed.

The evidence presented at trial was sufficient to allow a reasonable mind to support a conclusion that Kemp was a perpetrator of the conspiracy. The evidence demonstrated that Kemp was present when "everyone agreed" to the conspiracy, rode with the other parties to and from Gillespie's house, and received a portion of the money and drugs taken during the robbery. Accordingly, we find evidence in the record to satisfy the substantial evidence standard for denying defendant's motion to dismiss the charge of conspiracy to commit armed robbery. We find no error by the trial court and affirm the trial court's denial of Kemp's motions to dismiss.

## II. Edward Earl McDowell

[2] McDowell first assigns error to the trial court's failure to exclude victim Williams from the courtroom, contending that Williams was incompetent to understand or participate in the proceedings and his presence unfairly prejudiced the jury against McDowell. McDowell first argues that Williams' presence in the courtroom was "functionally equivalent to the presentation of evidence which defendant was without means to confront or cross-examine." McDowell states that the jury could simply look at Williams to determine the extent of his injuries, but that McDowell was prevented from cross-examining Williams about the injuries he sustained because Williams did not testify.

We agree with the trial court that Williams' presence in the courtroom did not constitute the presentation of evidence or its functional equivalent. Williams' courtroom presence for evidentiary purposes is not reflected in the trial testimony or the record, nor is there any indication that the State attempted to utilize his presence for evidentiary purposes. Furthermore, there is no indication that the jury based any part of its decision upon its observance of Williams' physical condition. The jury found McDowell not guilty of the charges of attempted murder and felonious assault of Williams. These verdicts in McDowell's favor tend to demonstrate the absence of prejudice caused by Williams' courtroom presence during trial.

McDowell argues that he was denied the opportunity to confront and cross-examine Williams because Williams was not called to testify and was incapable of communicating. However, McDowell could have called Williams as a witness and could have questioned him about his injuries. While the testimony indicated that Williams could not verbally communicate, it did tend to show that Williams could communicate through non-verbal means, such as blinking his eyes and lifting his legs. Thus, McDowell was not prevented from examining Williams as a result of his injuries and had sufficient opportunity to confront Williams as a witness if he wished.

McDowell further argues that, to the extent Williams' presence was evidence, it should have been excluded because the evidence was not presented in accordance with the North Carolina Rules of Evidence. Additionally, McDowell argues that the prejudicial effect of the evidence substantially outweighs any probative value and should have been excluded from evidence. McDowell cites *State v. Stokes*, 528 S.E.2d 430 (S.C. Ct. App. 2000), in support of this argument. In

*Stokes*, the South Carolina court ruled that it was error to admit a child into evidence to demonstrate the injuries sustained by the child during an assault. The court reasoned that submitting the injured child into evidence would "evoke great sympathy for the victim" and would likely produce a prejudiced response from the jury. *Id.* at 433.

*Stokes* is clearly distinguishable from the case before us. In *Stokes*, the injured child was actually physically presented and admitted into evidence as an exhibit. In the case before us, Williams was neither admitted into evidence as an exhibit nor tendered as a witness. He simply observed the trial from the seats in the courtroom that were open to the general public. There was no improper or overly prejudicial evidentiary admission because Williams' presence was never admitted or utilized as evidence during the trial.

[3] McDowell also argues that the trial court incorrectly interpreted the Crime Victims' Rights Act in refusing to exclude Williams from the courtroom. *See* N.C. Gen. Stat. § 15A-830 (2001). McDowell maintains that the Act's provision permitting a legal guardian to be present in the courtroom in lieu of a physically or mentally incompetent or minor victim, prohibits the actual victim from being in the courtroom as well. This aspect of the Crime Victims' Rights Act has not been previously addressed by our appellate courts and we disagree with McDowell's narrow interpretation of the statute.

N.C. Gen. Stat. § 15A-841 (2001) provides that

[w]hen a victim is mentally or physically incompetent or when the victim is a minor, the victim's rights under this Article . . . may be exercised by the victim's next of kin or legal guardian.

In interpreting statutory language, we must give effect to the intent of the General Assembly. *Clark v. Sanger Clinic, P.A.*, 142 N.C. App. 350, 354, 542 S.E.2d 668, 671, *disc. review denied*, 353 N.C. 450, 548 S.E.2d 524 (2001). We must primarily rely on the language of the statute itself and refrain from judicial construction in the absence of ambiguity in the express terms of the statute. *Id.* at 354, 542 S.E.2d at 671-72.

The Crime Victims' Rights Act was designed to safeguard the rights of victims as they confront the accused through the legal process. The statute does not state that the exercise of rights of a minor or an incompetent by his or her legal guardian exclude the actual victim from the benefits and rights granted by the statute. Such

a restrictive reading would effectively bar all minors from observing or participating in proceedings relating to events in which they were victims. This is contrary to the spirit of the Crime Victims' Rights Act and was not reflected by the language used by the General Assembly. The statute should not be construed to place the victim's rights in competition with the guardian's ability to exercise those rights in the event the victim is rendered incapable of exercising them. Instead, the guardianship provision should be viewed as supplemental to the victim's rights in order to ensure that the victim's enjoyment of his or her rights under the Act is not hindered by any incompetency.

In the present case, Williams, the victim, was a minor and physically incompetent to exercise some of his rights under the Crime Victims' Rights Act, thereby permitting his mother to properly exercise those rights on his behalf. However, there is no evidence that Williams was incapable of observing the trial due to his physical incompetency or any mental incapacity and he exercised this right by attending the trial proceedings. His mother's attendance alongside him is inconsequential to the issue raised by McDowell. The fact that she may have exercised some of Williams' rights during the process did not preclude Williams from attending the trial under the terms of the Crime Victims' Rights Act. Williams' presence at trial was proper, whether the right was asserted primarily on his own or by his mother.

The language and purpose of the Act requires us to give a more expansive reading to the statute than proposed by McDowell. He has failed to demonstrate error in the trial court's decision or any prejudice resulting from Williams' presence in the courtroom. The trial court did not err in refusing to exclude victim Brandon Williams from the courtroom.

[4] McDowell next argues the trial court erred in sentencing him in the aggravated range for conspiracy based on a finding that McDowell induced others to participate in the crime. McDowell argues that finding that he induced others to participate in the offense as an aggravating factor is erroneous as a matter of law because it is based on the same evidence used to support his conspiracy conviction.

Under the Structured Sentencing Act, the trial court must consider evidence of aggravating and mitigating factors and may then impose a sentence in its discretion. N.C. Gen. Stat. § 15A-1340.16(a) (2001). The State bears the burden of proving aggravating factors by a preponderance of the evidence. *Id.* A trial court's weighing of miti-

gating and aggravating factors will not be disturbed on appeal absent a showing that there was an abuse of discretion. *See State v. Wampler*, 145 N.C. App. 127, 549 S.E.2d 563 (2001); *see also State v. Daniels*, 319 N.C. 452, 355 S.E.2d 136 (1987). "Evidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation, and the same item of evidence shall not be used to prove more than one factor in aggravation." N.C.G.S. § 15A-1340.16(d); *see State v. Holt*, 144 N.C. App. 112, 547 S.E.2d 148 (2001). In *State v. SanMiguel*, 74 N.C. App. 276, 328 S.E.2d 326 (1985), our Court upheld the aggravated sentence of a defendant who pled guilty to conspiracy and was found by the trial court during sentencing to have induced others to participate in the conspiracy. Our Court reasoned that a conspiracy is an agreement to do a criminal act, while "inducement to enter an agreement necessarily precedes the agreement itself." *Id.* at 281, 328 S.E.2d at 330. The inducement of others is not an element of conspiracy and may be found independently of the conspiracy.

In the present case, testimony was presented that McDowell initiated the idea of robbing Gillespie. There is no evidence of a contemplated robbery or of targeting Gillespie outside of McDowell's suggestion. McDowell's inducement of others to join in the offense preceded the formation of the actual conspiracy and is not an element thereof. The evidence presented at trial is sufficient to prove the aggravating factor by a preponderance of the evidence. The trial court did not abuse its discretion by finding an aggravated factor of inducement and imposing an aggravated sentence for the charge of conspiracy.

[5] McDowell next argues that the trial court erred in finding as an aggravating factor that he induced others to participate in the offense of possession of a firearm by a felon because (1) the evidence in support of this factor was the same evidence used to support the conspiracy conviction and (2) this aggravating factor was inapplicable to the facts in this case. An aggravating factor should be found by the trial court only if the defendant behaved in a manner that increases his culpability for the offense. *State v. Bates*, 76 N.C. App. 676, 334 S.E.2d 73 (1985). The aggravating factor must be proven by a preponderance of the evidence and the sentence imposed is within the discretion of the trial court. N.C.G.S. § 15A-1340.16(a).

In the case before us, the trial court found an aggravating factor based on inducement of others to participate in the offense of possession of a firearm by a felon. Prior to the formation of the conspir-

acy, there is no evidence that McDowell possessed a firearm on his own accord. McDowell obtained a firearm from Rhodes, one of the co-conspirators, who also provided a gun to Ripley. As previously discussed, McDowell initiated the idea of robbing Gillespie and convinced the others to participate in the conspiracy, including Rhodes. The evidence is sufficient to prove the aggravating factor by a preponderance of the evidence. The trial court did not abuse its discretion by finding an aggravated factor of inducement and imposing an aggravated sentence for the charge of possession of a firearm by a felon.

**[6]** Lastly, McDowell argues the trial court erred in not finding a statutory mitigating factor which was supported by reliable and uncontroverted evidence. A trial court must consider evidence of mitigating factors and may depart from the presumptive range of sentencing in its discretion. N.C.G.S. § 15A-1340.16(a). The defendant bears the burden of proving mitigating circumstances by a preponderance of the evidence. *Id.*; *State v. Noffsinger*, 137 N.C. App. 418, 429, 528 S.E.2d 605, 612 (2000). "A sentencing judge must find a statutory mitigating sentence factor if it is supported by a preponderance of the evidence." *State v. Crisp*, 126 N.C. 30, 41, 483 S.E.2d 462, 469, *disc. review denied and appeal dismissed*, 346 N.C. 284, 487 S.E.2d 559 (1997). A mitigating factor is proven when the evidence is substantial, " 'uncontradicted[,] and there is no reason to doubt its credibility.' " *State v. Truesdale*, 123 N.C. App. 639, 643, 473 S.E.2d 670, 672 (1996) (quoting *State v. Hood*, 332 N.C. 611, 623, 422 S.E.2d 679, 685 (1992)); *see also State v. Maness*, 321 N.C. 454, 364 S.E.2d 349 (1988). The trial court has wide latitude in determining the existence of mitigating factors. *State v. Heatwole*, 333 N.C. 156, 423 S.E.2d 735 (1992).

McDowell argues that the trial court erred in not finding the mitigating factor of McDowell having a "support system in the community." *See* N.C.G.S. § 15A-1340.16(e)(18). Trial testimony offered by McDowell tended to show that he took care of his family, supported his minor child, and had a good reputation in the community. Thus, the trial court correctly found the mitigating factors of family support and positive employment history. While McDowell's sister-in-law testified that there was a large support structure available to McDowell in the community, the evidence did not demonstrate that he was engaged in this support structure or intended to utilize it. Furthermore, no evidence was presented indicating what this support structure consisted of. Testimony demonstrating the existence of a

large family in the community and support of that family alone is insufficient to demonstrate the separate mitigating factor of a community support system. One witness' conclusory testimony as to the existence of a support structure is unsubstantial and insufficient to clearly establish the factor and does not compel a finding of the mitigating factor. *See Maness*, 321 N.C. at 463, 364 S.E.2d at 353-54. The trial court did not err in refusing to find the mitigating factor.

No error in the trial of Shawn Dell Kemp.

No error in the trial of Edward Earl McDowell.

Judges McCULLOUGH and BRYANT concur.