An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-965
NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

STATE OF NORTH CAROLINA

v.                                    Buncombe County
                                      No.  09CRS053119
JENNIFER LYNN SMITH,                       09CRS000301
    Defendant.


Appeal by defendant from Judgment entered on or about 8 July 2009 by Judge James U. Downs in Superior Court, Buncombe County.  Heard in the Court of Appeals 20 February 2014.

> *Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Iain M. Stauffer, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Jillian C. Katz, for defendant-appellant.*


STROUD, Judge.


Jennifer Smith ("defendant") appeals from the judgment entered after a Buncombe County jury found her guilty of conspiracy to commit robbery with a dangerous weapon and robbery with a dangerous weapon. We hold that defendant has failed to show plain error at her trial or any error in her sentencing.

I.   Background

Defendant was indicted in Buncombe County for conspiracy to commit robbery with a dangerous weapon and robbery with a dangerous weapon. Defendant pled not guilty and was tried by jury in July 2009.

At trial, the State presented video from a Citi Stop convenience store in Buncombe County. The video showed that around 10:51 p.m. on 7 March 2009, defendant and her husband pulled up to the Citi Stop. She was driving an older blue pickup truck and Mr. Smith was riding in the passenger seat. Defendant exited the truck and went into the store. She walked back to the bathroom and stayed there for approximately 32 seconds. When she left the bathroom, defendant walked around the counter, looked at the clerk, Kelly Thompson, walked toward the front door, hesitated, then walked back toward the counter, hesitated again, and left the store. She got back into the driver's seat of the truck and pulled out of view of the store's cameras.

A few minutes later, a man wearing shorts, a white t-shirt, a hooded sweatshirt, and a burgundy ski mask entered the store. At the time, Ms. Thompson was mopping the floor and did not immediately notice the masked man. The man approached Ms. Thompson, said something along the lines of "This is a holdup," and instructed her to give him the money. The masked man was

carrying a dark colored revolver. Ms. Thompson discreetly hit the panic button and handed over the money from her register, totaling approximately $96. He placed a black bag on the counter and told her to put the money in the bag. Ms. Thompson tossed the bag back at the armed man and told him to do it himself. The man then demanded Ms. Thompson give him the money from the other register. When Ms. Thompson informed him that she did not have access to that register he shook the gun at her and left the store. Ms. Thompson followed the man out of the store and saw him get into the passenger side of an older blue pickup truck. She saw him pull off the mask when he got into the truck. Once the truck pulled away, Ms. Thompson called 911 and gave the police a description of the man and the truck.

Sergeant Mike Yelton of the Asheville Police Department responded to the Citi Stop. Ms. Thompson described the man, what he was wearing, and the truck he left in. Sergeant Yelton drove to a nearby Hot Spot convenience store to make sure that there was not a follow-up robbery. He noticed an older blue truck matching Ms. Thompson's description of the getaway vehicle in front of the Hot Spot store. As he pulled up to the truck, he saw a female walking toward the store and a young white male sitting in the passenger seat. He called for backup, then

approached the truck and ordered the man out of the vehicle. He noticed that the man was wearing clothing that matched Ms. Thompson's description of the robber. Sergeant Yelton saw that the man had been sitting on a dark revolver in the passenger seat. The gun also matched Ms. Thompson's description, so he placed the man in handcuffs.

As he was handcuffing the man, later identified as defendant's husband, defendant came out of the Hot Spot store and approached the officers. She asked them why her husband was being arrested. They instructed her to stay away and searched the truck. In the truck, the officers found a red ski mask behind the driver's seat and a money bag that matched Ms. Thompson's description of the bag used by the robber. The officers also found approximately $84 in cash in Mr. Smith's pocket. The officers arrested both Mr. Smith and defendant.

Detective Buchanan with the Asheville Police Department interviewed defendant. Defendant gave a detailed description of her movements that day but did not mention going to the Citi Stop until the detective asked. Defendant claimed that they just went to the store so that she could use the bathroom. She also explained that her husband was on probation and that he owed approximately $20,000.

The jury found defendant guilty of conspiracy to commit robbery with a dangerous weapon and robbery with a dangerous weapon. After the jury returned verdicts on both charges, the trial court proceeded with a hearing on the aggravating factor alleged by the State. The State alleged that defendant had committed these offenses while on pretrial release related to a pending misdemeanor charge.

The State called a deputy clerk of court and introduced a certified copy of a computer printout showing that a Jennifer Lynn Smith had a pending charge of misdemeanor shoplifting with an offense date of 12 January 2009. The State rested, but, in the absence of the jury, the trial court asked whether the State was going to offer any biographical data tying the Jennifer Smith in the printout to defendant. As the prosecutor was considering how to proceed, the trial court said,

> You've got a courtroom clerk here that supervises and has custody of the files in this case. . . . You can ask her to compare the biographical data, as I understand it, in the files here with the data on that sheet when she was arrested back in January. And if you can tie up those loose ends, then it's presumptive and prima facie enough to survive any motion to dismiss. Well, let's get on with it now. If you're going to allege these things, let's have them ready to go.

Defendant objected "to the district attorney being instructed on how to proceed." The trial court overruled the objection. The State then called another deputy clerk of court to compare the date of birth and address listed on the computer printout and the information on the order for arrest connected to the present charges. She testified that they matched.

The jury found as an aggravating factor that defendant committed the offenses while on pretrial release on another charge. After the jury found the aggravating factor, defendant presented evidence in mitigation. Defendant testified that she suffered from bipolar disorder and that she had problems with substance abuse. She testified that on the day of the robbery she had been taking pills and drinking three pints of vodka with her husband. She further testified that she had helped take care of her children and that her parents and her church provided her with support. Defendant's adoptive mother (her biological grandmother) testified on her behalf as well. She testified that defendant was a person of good character who was well-regarded by her church. She further testified that defendant's husband was a bad influence on her.

The defense requested that the trial court find six mitigating factors: that defendant played a minor role in the

crimes; that she had a mental or physical condition that lessened her culpability; that she was a person of good character who has a good reputation in the community; that she has a support system in the community; that she supported her family; and that she has a positive employment history. When the trial court asked what evidence had been presented regarding defendant's employment history, defendant's trial counsel asked to recall defendant, which the trial court allowed. Defendant testified that she had worked as a paralegal from August 2008 to February 2009. She stated that she stopped working as a paralegal due to her substance abuse.

The trial court found the sole aggravating factor alleged and found none of the requested mitigating factors. The trial court consolidated both charges for judgment and sentenced defendant in the aggravated range of 77-102 months imprisonment. Defendant gave notice of appeal in open court. However, due to an apparent error by the Buncombe County Clerk of Court, appellate entries were not made until 15 February 2013.

## II. Alleged Errors at Trial

Defendant argues that the trial court plainly erred by allowing Ms. Thompson to testify regarding the impact the

robbery had on her and by giving an improper instruction in response to a jury question. We disagree.

A.    Standard of Review

Neither of the trial errors raised on appeal were preserved below. Therefore, we review defendant's arguments under the plain error standard.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations, quotation marks, and brackets omitted). The test for plain error "is unlikely to be satisfied . . . when evidence of the defendant's guilt is overwhelming." *Id.* at 516, 723 S.E.2d at 333; *State v. Walker*, 316 N.C. 33, 40, 340 S.E.2d 80, 84 (1986) (holding that "the overwhelming evidence against the defendant prevented the error complained of from rising to the level of plain error").

B.    Victim Impact Testimony

Defendant first argues that the State improperly asked Ms. Thompson about the effect that the robbery had on her. Even assuming it was error for the trial court to admit this testimony, defendant cannot show that the evidence had any impact on the jury's verdict.

Toward the end of Ms. Thompson's direct examination, the prosecutor asked her to "tell the jury a little bit about what the impact of this has been on your life." She testified—without objection—that

> This has been very stressful for me. I am currently unemployed and fighting for unemployment. This was the second time this happened to me in a two-month period, that I had a gun put in my face. I'm a mother of a two-year-old. I have three children, 22, 20, and two. I'm terrified now to work anywhere by myself, especially at night, so finding another job is nearly impossible for me because these are the hours that I can work. I have nightmares. I re-live this thing every day. I'm scared to go into convenience stores at night. I'm scared to go anywhere by myself.

The prosecutor did not follow up with any additional questions about the impact that the robbery had on her, nor did the prosecutor refer to this evidence at any other point at the trial or clearly attempt to inflame the jury's passions with this evidence. Moreover, given the overwhelming evidence against defendant, we are not convinced that the exclusion of

this evidence would have changed the jury's verdict. Defendant was found to be driving her husband in a truck that Ms. Thompson identified as the getaway vehicle. Defendant was seen on the Citi Stop's surveillance tape driving the vehicle and even entering the store minutes before her husband entered and robbed Ms. Thompson. The ski mask, gun, and money bag used in connection with the robbery were all found in the truck that defendant was driving.

Given this evidence, there is no probability that the exclusion of a single question and answer on the impact of an armed robbery on the victim would have changed the jury's verdict. *See Walker*, 316 N.C. at 40, 340 S.E.2d at 84. Therefore, we hold that defendant has failed to show that the admission of the testimony constitutes plain error. *See Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

C.   Trial Court's Response to Jury Question

Defendant next argues that the trial court plainly erred in responding to one of the jury's questions during deliberations. Again, we disagree.

To show that a jury instruction was plainly erroneous, a defendant must first show that it was error. *See State v. Cummings*, 361 N.C. 438, 470, 648 S.E.2d 788, 807 (2007)

("[B]efore engaging in plain error analysis it is necessary to determine whether the instruction complained of constitutes error."), *cert. denied*, 552 U.S. 1319, 170 L.Ed. 2d 760 (2008). Here, defendant contends that "[t]he trial court erred by giving an imprecise, erroneous supplemental jury instruction related to the agreement element of the conspiracy charge . . . Specifically, defendant contends that the following exchange between a juror and the trial court constitutes error:

> [JUROR]: If the alleged co-conspirator, this whole thing was carried out with duress on the conspirator, not the person that actually committed the crime, if it was under duress or threat, does that have any bearing on the three elements that have to be met?
>
> THE COURT: Threat of whom?
>
> [JUROR]: Threat of the person that committed the robbery. The person that committed the robbery --
>
> THE COURT: What are you asking?
>
> [JUROR]: -- threatens the person that's being accused of being a conspirator.
>
> THE COURT: You mean some duress or threat on the defendant –
>
> [JUROR]: Yes.
>
> THE COURT: -- by the other person?
>
> [JUROR]: Yes. Does that have any bearing?

THE COURT: Members of the jury, you have the freedom to decide whether or not the State has met its burden on the elements of what it must prove. And the acting in concert is a volitional -- a voluntary act. In other words, it doesn't have anything to do with being under duress. The State must prove beyond a reasonable doubt, for that acting in concert to apply, that two or more persons join in a common purpose. It doesn't say one forcing another. Two or more join in a common purpose to commit an offense like robbery with a dangerous weapon. Then, whether both of them are present or one of them is actually present
and the other is constructively present, they're both guilty, if all of the elements of robbery with a dangerous weapon are met. Okay?

Defendant argues that "[a]lthough the jurors asked about 'duress' or the existence of a 'threat,' they were actually inquiring about what the law required if they believed Ms. Smith did not actually agree to commit the robbery in question . . . ." We see no basis on which to read any more into the jury's question than the plain language of the question itself. The jurors specifically asked about duress and the trial court answered their question on duress specifically.

The trial court correctly stated that duress had nothing to do with the present case. Although the jury may have been asking about duress in the colloquial sense, duress as a legal defense has a particular definition. "Evidence precluding the

inference of an agreement [in a conspiracy prosecution] would have to show that the duress to which [a conspirator] was subject was enough to overbear his will and make his participation in the conspiracy involuntary." *United States v. Freeman*, 208 F.3d 332, 342 (1st Cir. 2000) (citation, quotation marks, and brackets omitted). "In order to successfully invoke the duress defense, a defendant would have to show that his actions were caused by a reasonable fear that he would suffer immediate death or serious bodily injury if he did not so act." *State v. Cheek*, 351 N.C. 48, 61-62, 520 S.E.2d 545, 553 (1999) (citation and quotation marks omitted), *cert. denied*, 530 U.S. 1245, 147 L.Ed. 2d 965 (2000). "There must be evidence supporting each element of duress for the trial court to instruct the jury on that defense." *State v. Brown*, 182 N.C. App. 115, 118, 646 S.E.2d 775, 778, *disc. rev. denied*, 361 N.C. 431, 648 S.E.2d 848, *cert. denied*, 552 U.S. 1010, 169 L.Ed. 2d 373 (2007).

There was absolutely no evidence here that defendant was acting under duress during the commission of these crimes. Defendant never even raised the possibility of duress as a defense and did not request an instruction on duress. There was no evidence presented that defendant's husband ever threatened

her with death or great bodily harm, nor that any agreement to commit the robbery was involuntary. Therefore, the trial court did not err, let alone commit plain error, by instructing the jury that the issue of duress was irrelevant to their deliberations.

### III. Sentencing

Defendant next argues that the trial court erred in three ways during her sentencing. First, she contends that the trial court abused its discretion and departed from its impartial role in allowing the State to present additional sentencing evidence after it had rested. Second, she asserts that the trial court erred in failing to find several mitigating factors which were, in her opinion, supported by "uncontradicted and manifestly credible evidence." Finally, she argues that the trial court abused its discretion by sentencing her "to an aggravated sentence based on improper considerations as evidenced by its comments insinuating that [defendant] is a bad mother, a liar, and a 'thief.'" We find all three arguments unpersuasive and hold that the trial court did not err in sentencing defendant.

First, the trial court did not depart from its role as an impartial judge by bringing missing pieces of evidence to the State's attention and permitting the State to reopen its case

during the sentencing hearing to prove the alleged aggravating factor. To support its assertion that defendant had committed the present offense while on pretrial release, the State called one deputy clerk of court and introduced a computer printout showing that Jennifer Lynn Smith had a pending charge for "misdemeanor shoplifting and concealment of goods" with an offense date of 12 January 2009. On cross-examination, defendant's counsel highlighted the fact that there was no photograph of the defendant in that case and raised doubts as to whether the Jennifer Smith in the printout was defendant. The State then rested its case as to the alleged aggravating factor.

Outside the presence of the jury, the trial court then asked, "The State is not offering any evidence tying in any biographical data between this one charged and this one in this case?" The prosecutor responded, "Your Honor, her birth date and all that information is actually on the computer printout." The trial court then asked the prosecutor how the State could tie that information to defendant without additional evidence. As the prosecutor considered his options, the trial court suggested that the prosecutor just ask the courtroom clerk to compare the biographical data on the printout with some official document tied to defendant's arrest in the present case. Defendant

objected, but the trial court overruled the objection and permitted the State to call the courtroom clerk and introduce her testimony comparing the biographical data on the printout to the arrest warrant connected to the present charges.

> The law imposes on the trial judge the duty of absolute impartiality. However, not every ill-advised expression by the trial judge is of such harmful effect as to require a reversal. The objectionable language must be viewed in light of all the facts and circumstances, and unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless.

*State v. Wise*, 178 N.C. App. 154, 161, 630 S.E.2d 732, 736 (2006) (citations, quotation marks, and brackets omitted). Additionally, "the judge in his discretion may permit any party to introduce additional evidence at any time prior to verdict. A judge's decision in this regard will be reversed only upon a showing of an abuse of discretion." *Id.* at 163, 630 S.E.2d at 737 (citations, quotation marks, and brackets omitted). Defendant only argues that the trial court abused its discretion in permitting the State to re-open its case because it showed a lack of impartiality.

In *Wise*, the State initially failed to produce evidence of defendant's release date from prison, which the trial court

considered a material issue of fact that the jury had to resolve. *Id.* at 161-62, 630 S.E.2d at 736-37. The defendant argued that

> the judge acted as the prosecutor by allowing the prosecution to reopen the case and suggesting to the prosecution that it needed to make a motion to reopen the case. Furthermore, [the] defendant claim[ed] that had the judge not appraised the prosecutor of the law, the State's case against defendant would have failed, and therefore the judge's interference was prejudicial.

*Id.* at 162, 630 S.E.2d at 737. We held that the trial court's comments were not prejudicial error "because in the present case the judge merely settled a legal dispute outside of the presence of the jury." *Id.*

Similarly, in *State v. Ryder*, the defendant argued that the trial court violated his right to a fair trial by highlighting that the prosecutor had failed to ask a witness to make an in-court identification of the defendant and allowing him to ask for such an identification on re-direct examination. 196 N.C. App. 56, 61, 674 S.E.2d 805, 809 (2009). We noted that "the trial court was not required to assume that the State would fail to recognize its error and remain silent so that defendant would be advantaged by the State's mistake." *Id.* at 62, 674 S.E.2d at

810. We held that the trial court's intervention was not error and did not "suggest a lack of impartiality." *Id.*

Here, as in *Ryder* and *Wise*, the trial court's remarks were made outside of the presence of the jury. "[T]herefore, this appeal does not present any question of the trial court's prejudicing the jury by expressing an opinion in its presence." *Id.* at 61, 674 S.E.2d at 809. The trial court simply called an omission to the attention of the prosecutor and suggested a manner of curing the omission that would avoid inconvenience and delay. Unlike in those cases where we have ordered a new trial, the trial judge here did not "intervene[] with questions and comments well over 100 times" in the presence of the jury. *State v. Steele*, 23 N.C. App. 524, 526, 209 S.E.2d 372, 373 (1974).

Additionally, during the defendant's case in mitigation, the trial court afforded her similar latitude. Defendant asserted that her work history was a factor in mitigation. The trial court noted that defendant had failed to present evidence on that factor and permitted defendant's trial counsel to recall defendant to testify on that point specifically. Therefore, we conclude that the trial court did not improperly depart from its neutral role or abuse its discretion in allowing the State to

reopen its case and present additional evidence on the alleged aggravating factor.

Defendant next argues that the trial court erred in failing to find her asserted mitigating factors. We disagree.

> The defendant bears the burden of proving mitigating circumstances by a preponderance of the evidence. A sentencing judge must find a statutory mitigating sentence factor if it is supported by a preponderance of the evidence. A mitigating factor is proven when the evidence is substantial, uncontradicted, and there is no reason to doubt its credibility. The trial court has wide latitude in determining the existence of mitigating factors.

*State v. Kemp*, 153 N.C. App. 231, 241, 569 S.E.2d 717, 723 (citations, quotation marks, and brackets omitted), *disc. rev. denied*, 356 N.C. 441, 573 S.E.2d 158 (2002).

Defendant asserted six mitigating factors under N.C. Gen. Stat. § 15A-1340.16(e) (2007): (1) that she played a minor role in the crimes, N.C. Gen. Stat. § 15A-1340.16(e)(2); (2) that she had a mental or physical condition which lessened her culpability, N.C. Gen. Stat. § 15A-1340.16(e)(3); (3) that she was a person of good character, N.C. Gen. Stat. § 15A-1340.16(e)(12); (4) that she supports her family, N.C. Gen. Stat. § 15A-1340.16(e)(17); (5) that she had a support system in the community, N.C. Gen. Stat. § 15A-1340.16(e)(18); and (6)

that she had a positive employment history, N.C. Gen. Stat. § 15A-1340.16(e)(19).

The only evidence she presented as to all six was testimony from defendant herself and defendant's mother. Defendant testified that she had a substance abuse problem and that on the day of the robbery she and her husband had taken drugs and consumed three pints of vodka. She further testified that she had been diagnosed with bipolar disorder. Defendant explained that she had gone to school to be a paralegal and that from approximately August 2008 to February 2009 she worked as a paralegal. She quit her paralegal job because of her substance abuse problem.

"While evidence [of a mitigating factor] may not be ignored, it can be properly rejected if it fails to prove, as a matter of law, the existence of the mitigating factor." *State v. Blackwelder*, 309 N.C. 410, 419, 306 S.E.2d 783, 789 (1983). We have held that "one witness' conclusory testimony as to the existence of a support structure is unsubstantial and insufficient to clearly establish the factor and does not compel a finding of the mitigating factor." *Kemp*, 153 N.C. App. at 242, 569 S.E.2d at 723. It is the trial court's role to assess the credibility of witnesses. *State v. Maness*, 321 N.C. 454, 463,

364 S.E.2d 349, 354 (1988). Uncontradicted evidence conclusively establishes a mitigating factor only if "no reasonable inference to the contrary can be drawn[] and . . . the credibility of the evidence is manifest as a matter of law." *State v. Jackson*, 119 N.C. App. 285, 291, 458 S.E.2d 235, 240 (1995).

Testimony in support of a mitigating factor is "manifestly credible [when] there are only latent doubts as to the credibility of oral testimony and the opposing party has failed to point to specific areas of impeachment and contradictions." *State v. Pigott*, 331 N.C. 199, 214, 415 S.E.2d 555, 564 (1992) (citation and quotation marks omitted). In this case, the only testimony as to any of the mitigating factors was that of defendant and her mother. "[T]he relationship of the witnesses to defendant is a factor which the fact-finder may consider in assessing the witnesses' credibility." *State v. Taylor*, 309 N.C. 570, 578, 308 S.E.2d 302, 308 (1983). We conclude that none of the testimony was manifestly credible as a matter of law.

First, the trial court was not required to accept defendant's characterization of her role in the crime as "minor." "A minor role can be defined as one in which the individual performs a comparatively unimportant function in the commission of an offense." *State v. Crandall*, 83 N.C. App. 37,

40, 348 S.E.2d 826, 829 (1986), *disc. rev. denied*, 319 N.C. 106, 353 S.E.2d 115 (1987). Here, there was evidence, as noted by the trial court, that defendant acted as a lookout, scout, and getaway driver for her husband. The trial court did not err in refusing to find that her role was minor.

Second, as to a mental or physical condition, the trial court was not required to believe defendant's testimony that she had been diagnosed as bipolar or accept that this diagnosis would in any way mitigate her crimes, particularly without any medical evidence as to the details of her condition or any expert testimony as to how this disorder may affect her. *See id.* "While a mental condition may be capable of reducing a defendant's culpability for an offense, evidence that the condition exists, without more, does not mandate consideration as a mitigating factor." *Jackson*, 119 N.C. App. at 291, 458 S.E.2d at 240. Moreover, this testimony was not inherently credible. Defendant introduced no evidence of a diagnosis by a medical professional other than her conclusory testimony. Therefore, the trial court did not err in refusing to find this mitigating factor.

Third, although defendant's mother testified that she was considered a person of good moral character in her community,

the trial court specifically noted that she had "shown since 2008 that [she is] a thief" and referenced her history of larceny. The trial court was not required to accept the testimony of defendant's mother that she was a person of good character, especially when there was evidence that she had a recent history of larceny. *See Maness*, 321 N.C. at 463, 364 S.E.2d at 354 (holding that it was not error for the trial court to refuse to find that the defendant was a person of good character if it did not consider the testimony credible). Moreover, the trial court could legitimately consider that this testimony was offered by defendant's mother in assessing its credibility. *See Taylor*, 309 N.C. at 577, 308 S.E.2d at 308. Therefore, the trial court did not err in refusing to find that defendant was a person of good character.

Fourth, the evidence that defendant supported her children or family and that she had a support system in the community was not inherently credible. She testified that she took care of the children while her husband had been in prison and supported them. Yet she also testified that she had a long-standing substance abuse problem. The only employment history she presented was eight months of paralegal work, which she quit due to her substance abuse. She further testified that after she

quit her paralegal job, her source of income, she would help feed, clothe, and bathe her children. Both she and her mother testified that defendant and her children had relied on her mother for support. "One witness' conclusory testimony as to the existence of a support structure is unsubstantial and insufficient to clearly establish the factor and does not compel a finding of the mitigating factor." *State v. Wiggins*, 159 N.C. App. 252, 271, 584 S.E.2d 303, 317 (citation and quotation marks omitted), *disc. rev. denied*, 357 N.C. 511, 588 S.E.2d 472 (2003), *cert. denied*, 541 U.S. 910, 158 L.Ed. 2d 256 (2004). Defendant's testimony that she had supported her family and the testimony that she had a support system in the community were not inherently credible. *See State v. Harrison*, 164 N.C. App. 693, 697-98, 596 S.E.2d 834, 838 (holding that the trial court was not required to credit the defendant's self-serving testimony, considering the discrepancies in the evidence), *disc. rev. denied*, 358 N.C. 736, 602 S.E.2d 362 (2004). Therefore, the trial court did not err in refusing to find those mitigating factors.

Finally, defendant asserted that she had a positive employment history. However, the only employment history she testified to was the time she spent as a paralegal. "A trial

court is not required to find a mitigating factor concerning positive employment history when a defendant has only presented evidence of jobs held, but provides no other evidence of positive employment history." *State v. Bacon*, ___ N.C. App. ___, ___, 745 S.E.2d 905, 909 (2013). She admitted that she stopped working because of her addiction. Moreover, there was no evidence that she was "gainfully employed" at the time of the crimes here. Therefore, the trial court did not err in refusing to find this mitigating factor.

In conclusion, none of the evidence presented by defendant conclusively established any mitigating factor. "The evidence at the sentencing hearing here would have permitted such . . . finding[s], but in our view it did not compel it." *State v. Bynum*, 65 N.C. App. 813, 815, 310 S.E.2d 388, 390, *disc. rev. denied*, 311 N.C. 404, 319 S.E.2d 275 (1984). None of the testimony presented was inherently credible and the trial court was not required to believe it. Therefore, we hold that the trial court did not err in refusing to find any mitigating factors here.

Finally, defendant asserts that the trial court abused its discretion by using improper considerations in sentencing.

Defendant asserts that the following statement by the trial court shows its consideration of improper factors:

> The court finds an aggravating factor to this, in both these offenses, in that the offenses were committed at a time when you were on a pretrial release. You have a history of misdemeanor larceny and, although it doesn't count for points, you were facing a charge of misdemeanor shoplifting. You have shown since 2008 that you are a thief. And the activity in which you were found guilty of in this instance was ramped up to the point that you were running with a rogue, albeit your husband, and he was a thief with the use of a firearm. You are not a minor participant. You drove the vehicle. And the film indicates and shows that, unless it drove itself. And I don't know about your physical condition or your mental condition, you say you've got it, but I think – I'm not going to find that as a mitigating factor. And any positive employment history is limited at best. What you've done and do for your children, quite candidly, a house cat would do for kittens. Thank goodness your mother and father are still around and capable of taking care of them in the absence of your husband and you. In any event, no mitigating factors exist. One aggravating factor has been found, and the aggravating outweighs the mitigating. You will be sentenced in the aggravated range.

Defendant asserts that by stating that she "has shown since 2008 that [she is] a thief" the trial court was considering defendant's 2008 conviction for misdemeanor larceny, not the pending misdemeanor charge used in aggravation. We agree that

the trial court was commenting on her prior conviction, but disagree that the comment was improper.

As discussed above, the trial court's statement that defendant is a thief was in the midst of its explanation for why it was rejecting all of defendant's mitigating factors. The fact that defendant has a history of larceny directly contradicts the testimony that defendant is a person of good character. There is no indication that the trial court used her 2008 larceny conviction as an aggravating factor. The only aggravating factor found was that defendant was on pretrial release for the 2009 shoplifting charge at the time of the crimes charged here. Defendant raised her character as an issue in mitigation. Therefore, we hold that it was not improper for the trial court to comment on defendant's character in its sentencing decision. *See State v. Murphy*, 152 N.C. App. 335, 345, 567 S.E.2d 442, 448 (noting that '[w]hen a defendant produces evidence of his character in order to take advantage of the 'good character or reputation' mitigating factor, character becomes a direct issue in the case . . . ."), *disc. rev. denied*, 356 N.C. 442, 573 S.E.2d 161 (2002).

## IV.  Conclusion

For the foregoing reasons, we conclude that defendant has failed to show plain error in the conduct of the guilt phase of defendant's trial. We further conclude that the trial court did not err during the sentencing phase of her trial.

NO PLAIN ERROR; NO ERROR.

Judges CALABRIA and DAVIS concur.

Report per Rule 30(e).