STATE OF NORTH CAROLINA v. VICTOR MANUEL PEREZ

No. COA06-440

(Filed 20 March 2007)

**1. Constitutional Law— First Amendment—right to association—evidence of gang membership—admissibility**

Evidence of gang membership was not barred from a prosecution for second-degree murder by the First Amendment's right to association; defendant had offered evidence of good character and the State was allowed to cross-examine defendant's character witnesses about their knowledge of defendant's association with a gang. Moreover, the State presented overwhelming evidence of guilt and any error in admitting the gang membership evidence was harmless.

**2. Criminal Law— instructions—self-defense—defense of others—burden of proof**

There was no plain error in a second-degree murder prosecution in the instruction on the burden of proof on claims of self-defense and defense of a third party. When the instruction is viewed in context, the jury understood that defendant did not bear the burden of proof.

Appeal by defendant from judgment entered 25 April 2005 by Judge Charles H. Henry in Onslow County Superior Court. Heard in the Court of Appeals 7 February 2007.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert C. Montgomery and Assistant Attorney General John G. Barnwell for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Benjamin Dowling-Sendor for defendant appellee.*

McCULLOUGH, Judge.

Defendant Victor Manuel Perez (hereinafter "defendant") appeals from a judgment sentencing him to a term of 157 to 198 months' imprisonment entered upon his conviction by a jury for the second-degree murder of Frankie Rodriguez, Jr. (hereinafter "Rodriguez"). We find no prejudicial error.

STATE v. PEREZ

[182 N.C. App. 294 (2007)]

Prior to trial, counsel for defendant made a motion *in limine* to exclude all evidence regarding defendant's membership in or association with any gang at any stage of trial. The trial court determined that the State would be allowed to cross-examine Captain Arthur, a witness for defendant, about the gang affiliation.

The State offered evidence at defendant's trial tending to show the following: On 3 September 2002, Rodriguez and Shannon Claudio-Diaz picked up Charles Glover in a Dodge Neon and drove over to China Garden where Rodriguez stated he had seen defendant. When Rodriguez saw defendant and a female companion exiting China Garden, he got out of the car and defendant and Rodriguez began arguing. After the verbal confrontation, Rodriguez got back into the car and proceeded to drive away; but as he was exiting the parking lot, defendant hit the Dodge Neon from behind with his car. Defendant then got out of his car and before Rodriguez could fully exit his car began shooting at Rodriguez.

Charles Glover testified that there was a knife in Rodriguez's car but that Rodriguez did not have the knife in his hand during either confrontation as the knife had been put into the center console of the Dodge Neon.

Witnesses to the incident testified that defendant fired the gun at Rodriguez around eight or nine times before throwing the gun on the ground and fleeing the scene. Rodriguez was not seen at anytime brandishing a weapon. Roy Epley, a witness to the incident, approached the victim after defendant fled to render first aid but could not find a pulse. Epley testified that he did not observe anything in Rodriguez's hands when he responded. Rodriguez was pronounced dead at Onslow Memorial Hospital where he was transferred after being found in cardiac arrest at the scene. At the scene of the incident, officers recovered a 9-millimeter Beretta handgun and magazine as well as a "kitchen steak knife" located on the front floorboard of the Dodge Neon between the console and the passenger's seat.

Dr. Charles Garrett performed an autopsy on Rodriguez and found four gunshot entrance wounds to the torso. Dr. Garrett concluded that Rodriguez bled to death internally from the first gunshot wound which produced massive immediate hemorrhaging.

Defendant testified on his own behalf stating, "I shot [Rodriguez] because I thought he was going to kill me." Defendant further conceded that he never saw a gun or knife on the person of Rodriguez but noted that Rodriguez was a big guy and he was afraid of him. He had

been threatened by Rodriquez several times; and before he shot, he observed Rodriguez reach down, making defendant think he had a gun due to previous threats.

Captain William Arthur testified on defendant's behalf as to defendant's good character. Captain Arthur testified that defendant served under his command for approximately nine months and that in his opinion defendant's job performance was excellent; defendant had a "positive attitude and motivated everyone;" and Captain Arthur identified defendant's Marine Corps service records which were thereafter entered into evidence. On cross-examination of Captain Arthur the State asked the Captain whether being affiliated with a gang such as the Latin Kings would be consistent with being a good Marine, to which Captain Arthur responded that it would not. The State went on to point out items which were found upon inventory of defendant's barracks, including the nickname King Flesh and a five-point crown imprinted on the inside of a military cover, brass knuckles, a ten-page typewritten document entitled Chapter Constitutional of the ALKQN and sixteen photographs. The service record noted that the five-point crown was a symbol for the Latin Kings gang, King Flesh was defendant's gang name, ALKQN stood for Almighty Latin King and his Queen Nation, and that the photographs depicted defendant and his friends displaying gang signs and gang colors.

The State further cross-examined Officer Gamel regarding Latin King material seized from the vehicle defendant was driving at the time of the incident. The items seized from the vehicle by Officer Gamel included a notebook containing the Latin Kings constitution, a silver colored necklace with a medallion in the shape of a crown and a beaded necklace with black and yellow beads. Defendant objected to the cross-examination of both witnesses and denied that he had ever been a member of the Latin Kings.

The jury returned a verdict finding defendant guilty of second-degree murder of Rodriguez, and judgment was thereafter entered consistent with that verdict sentencing defendant. From that judgment, defendant appeals.

[1] Defendant contends on appeal that the admission of evidence tending to show that defendant was a member of the Latin Kings gang was constitutional error in violation of his First Amendment right to association and the Supreme Court's decision in *Dawson v. Delaware*, 503 U.S. 159, 117 L. Ed. 2d 309 (1992), *cert. denied*, 519 U.S. 844, 136 L. Ed. 2d 76 (1996).

"[T]he First Amendment protects an individual's right to join groups and associate with others holding similar beliefs." *Id.* at 163, 117 L. Ed. 2d at 316. However, the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations simply because those beliefs and associations are protected by the First Amendment. *See Dawson,* 503 U.S. 159, 117 L. Ed. 2d 309.

In *Dawson,* the Supreme Court found that the defendant's rights were violated by the introduction of evidence in a capital sentencing proceeding of the defendant's membership in the Aryan Brotherhood prison gang where the evidence had no apparent relevance to the crimes for which the defendant was convicted, was not relevant to prove any aggravating circumstances, and was not relevant to rebut any mitigating evidence of good character offered by the defendant. *Id.* Defendant contends on appeal that the holding in *Dawson* barred the introduction of evidence concerning his membership in the Latin Kings gang in the case at hand. We disagree.

In the instant case, defendant offered testimony through character witnesses as to his good character and his reputation as a good Marine. On cross-examination the State was allowed to question such character witnesses as to the knowledge of defendant's association with the Latin Kings and on whether evidence of membership in the Latin Kings gang was consistent with a reputation as a good Marine.

Even *assuming arguendo* that the introduction of such evidence through defendant's character witnesses at trial was in error, any error was harmless. "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt." N.C. Gen. Stat. § 15A-1443(b) (2005). One way for the appellate court to determine whether a constitutional error is harmless beyond a reasonable doubt is to ascertain whether there is other overwhelming evidence of the defendant's guilt; if there is such overwhelming evidence, the error is not prejudicial. *See State v. Tirado,* 358 N.C. 551, 581, 599 S.E.2d 515, 536 (2004), *cert. denied,* 544 U.S. 909, 161 L. Ed. 2d 285 (2005).

In the case *sub judice,* the outcome of the jury trial would have been the same had evidence of defendant's association with the Latin Kings not been admitted because competent overwhelming evidence of defendant's guilt existed. The State presented overwhelming evi-

dence and defendant admitted that he shot and killed Rodriguez. There was no one, including defendant, who could testify to the observance of any type of weapon in Rodriguez's hands at anytime during the confrontation between him and defendant. Witnesses testified that defendant began shooting at Rodriguez before he was fully able to exit his car. Defendant shot at Rodriguez eight or nine times and inflicted four gunshot wounds which proved fatal. Therefore, this assignment of error is overruled.

[2] Defendant next asserts that the trial court committed plain error in incorrectly instructing the jury that defendant had the burden of proving the claims of self-defense and defense of a third party beyond a reasonable doubt.

Plain error is applied only in exceptional cases where a review of the entire record establishes that the erroneous instructions probably had an effect on the jury's finding of guilt. *State v. Odom*, 307 N.C. 655, 660-61, 300 S.E.2d 375, 378-79 (1983). The error must be a " 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]' " *Id.* at 660, 300 S.E.2d at 378 (citation and emphasis omitted).

A charge must be construed contextually, and isolated portions of it will not be held prejudicial when the charge as a whole is correct. If the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for a reversal. Furthermore, insubstantial technical errors which could not have affected the result will not be held prejudicial. The judge's words may not be detached from the context and the incidents of the trial and then critically examined for an interpretation from which erroneous expressions may be inferred.

*State v. McWilliams*, 277 N.C. 680, 684-85, 178 S.E.2d 476, 479 (1971) (citations omitted).

"[A]n erroneous instruction on the burden of proof is not ordinarily corrected by subsequent correct instructions upon the point." *State v. Harris*, 289 N.C. 275, 280, 221 S.E.2d 343, 347 (1976). However, there are exceptions to this rule. In *State v. Harris*, 46 N.C. App. 284, 289, 264 S.E.2d 790, 793 (1980), this Court considered a case where the trial court had given an improper instruction on the burden of proof one time, but had given the correct instruction fifteen times and had instructed the jury properly in the all-important

**STATE v. PEREZ**

[182 N.C. App. 294 (2007)]

mandate on each charge. In that case, we determined that "[t]he charge as a whole presented the law of burden of proof to the jury in such a manner as to leave no reasonable cause to believe that the jury was misled." *Id.*

Defendant takes exception to the following portion of the jury charge:

If from the evidence you find beyond a reasonable doubt that the defendant assaulted Frankie Rodriguez, Jr. with deadly force; that is, force likely to cause death or great bodily harm and that the circumstances would have created a reasonable belief in [the] mind of a person of ordinary firmness that the assault was necessary or apparently necessary to protect himself from death or great bodily harm, and the circumstances did create such belief in the defendant's mind at the time he acted, such assault would be justified by self defense. . . .

. . . .

If, from the evidence, you find beyond a reasonable doubt that the defendant killed Frankie Rodriguez, Jr. and that the circumstances would have created a reasonable belief in [the] mind of a person of ordinary firmness that the killing was necessary or apparently necessary to protect a third person from death or great bodily harm, and the circumstances did create such belief in the defendant's mind at the time he acted, such assault would be justified by defense of a third person.

. . . .

First, it appeared to the defendant and he believed it to be necessary to kill Frankie Rodriguez, Jr. in order to save himself or a third person from death or great bodily harm. The law of defense of a third person which was previously defined for you is applicable in your considering of these offenses.

. . . .

If from the evidence you find beyond a reasonable doubt that the defendant assaulted the victim with deadly force; that is, force likely to cause death or great bodily harm and the circumstances would have created a reasonable belief in the mind of a person of ordinary firmness that the assault was necessary or apparently necessary to protect himself or a third person from death or great bodily harm, and the circumstances did create

such belief in the defendant's mind at the time he acted, such assault would be justified by self defense.

Defendant contends that these instructions to the jury incorrectly placed the burden of persuasion on defendant to prove self-defense or defense of a third party. Defendant's contention that such amounted to plain error is without merit. Although the quoted portion of the jury instructions does not clearly state that the State has the burden to disprove self-defense or defense of a third party beyond a reasonable doubt, we do not interpret this instruction as shifting the burden to defendant. Moreover, the trial court unquestionably instructed the jury correctly elsewhere as to the burden of proof. The trial court repeatedly instructed the jury that the State had the burden of proving from the evidence beyond a reasonable doubt that defendant did not act in self-defense or defense of another person. In fact, the jury was instructed immediately before or after each of the challenged instructions as to the State's burden to prove that defendant did not act in self-defense or defense of another beyond a reasonable doubt. When viewed in context, we are satisfied that the jury understood that defendant did not bear the burden of proof in this case.

Accordingly, this Court has determined that defendant received a trial free from prejudicial error.

No prejudicial error.

Judges BRYANT and LEVINSON concur.