THE STATE OF NORTH CAROLINA v. ANTHONY JACQUE JOHNSON

No. COA08-604

(Filed 7 April 2009)

**1. Homicide— instruction—lapse in one instance—no plain error**

There was no plain error in the trial court's second-degree murder instruction in context where the trial court omitted in one instance "with a deadly weapon" from the phrase "intentionally and with malice wounded [the victim] with a deadly weapon."

**2. Sentencing— mitigating factors—failure to find—no abuse of discretion**

The trial court did not abuse its discretion by not finding certain statutory mitigating factors when sentencing defendant for second-degree murder. It was within the court's discretion to determine that defendant's home life and mental health issues did not significantly reduce his culpability, or that defendant did not have a good treatment prognosis.

Appeal by defendant from judgment entered 23 July 2003 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 10 December 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Mary Carla Hollis, for the State.*

*Public Defender Jennifer Harjo, by Assistant Public Defender Nora Henry Hargrove, for defendant-appellant.*

BRYANT, Judge.

Defendant Anthony Johnson, born 12 July 1986, appeals from judgments and commitments entered 23 July 2007 consistent with a jury verdict finding him guilty of two counts of second degree murder. For the reasons stated herein, we find no error.

On 18 April 2005, defendant was indicted for two counts of first degree murder in the deaths of Regina Shelton and Bobby Handy. At trial, evidence presented by the State tended to show that on 18 December 2003 Jacob Snipes, a long-time friend of defendant's, sold crack cocaine to Regina Shelton and Bobby Handy along Randleman Road in Greensboro, North Carolina. Snipes and Shelton exchanged

STATE v. JOHNSON

[196 N.C. App. 330 (2009)]

phone numbers, and Shelton called Snipes the next afternoon to arrange another cocaine purchase. Snipes did not have the requested amount of cocaine so he manufactured "counterfeit dope to make up the difference between what [he] had . . . and what [he] didn't have." Snipes was with defendant that afternoon and told defendant that Shelton and Handy were spending $100.00 every time they purchased cocaine from him. Snipes also told defendant about his plan to sell Shelton and Handy "counterfeit dope."

That evening, Snipes traveled to Shelton and Handy's room at AmeriSuites where he sold them fake drugs for $150.00. Before Snipes made it back home, Handy called to complain. He wanted either real drugs or his money back. Snipes said he was unaware the drugs were not real, but if Handy agreed to buy more drugs, he would get an extra $50.00 worth of cocaine. Handy agreed.

When Snipes returned home, he informed defendant what had happened. Snipes stated, "I'm about to head back out there," and defendant responded, "Well, we need to go ahead and get them."

Counsel: What did he mean, "We need to go ahead and get them"?

Snipes: Just to get the money and leave.

Counsel: Are you saying that was [defendant's] idea?

Snipes: Yes, sir.

Counsel: Was he going to sell them any drugs at any time?

Snipes: No, sir.

Snipes acquired four grams of crack cocaine and along with defendant headed to meet Shelton and Handy. At approximately 9:00 p.m., on 19 December 2003, Snipes and defendant entered Shelton and Handy's hotel room. Snipes sold two grams of cocaine, the first of which Shelton and Handy smoked immediately. Snipes then excused himself to use a bathroom where defendant called him on his cell phone and told him to "get it all started."

When Snipes returned from the bathroom, he attacked Handy, but Handy soon got the upper hand. Defendant pushed Handy away and told Snipes "to go get the girl." Shelton had begun to scream and had reached the outside door when Snipes pulled her back inside. Snipes held her by the neck and choked her until she was no longer moving. Defendant also stood over an unconscious Handy.

Counsel: What did [defendant] do when he got up?

Snipes:   He stood up and went over to—We already knew
          where the money was at by that time, so we went
          over there, got the money—dumped the pocketbook
          out on the bed, got the money, and then we picked up
          the cell phone.

          Then he grabbed the iron and hit Regina [Shelton] in
          the head with the iron two times and then went over
          there and hit Mr. Handy like three times with the iron.

Defendant testified that he sold Shelton and Handy cocaine in the
hotel room and that Shelton attacked him to get more drugs. Al-
though he saw Snipes pick up an iron, he left the room before anyone
was struck with any kind of blunt object.

Dr. Maryane Gaffney-Kraft, qualified as an expert in forensic
pathology, testified that the cause of death of Bobby Handy was
asphyxia by strangulation. Dr. Thomas Owens, also qualified as an
expert in forensic pathology, testified that the cause of death of
Regina Shelton was some type of attack, "unspecified homicidal vio-
lence" but most likely asphyxiation.

After the close of the evidence, during the charge conference, the
trial court stated that it would give a second degree murder instruc-
tion that the State had to prove "malice, unlawfulness, intent to
wound with a deadly weapon . . . but [did not] have to prove specific
intent to kill, premeditation or deliberation." In its instructions to the
jury, the trial court stated the following:

Court: In order for you to find [defendant] guilty of second-
       degree murder, the State must prove beyond a reasonable
       doubt that [defendant], or someone acting in concert with
       him, intentionally and *with malice wounded Ms. Shelton*
       and thereby proximately caused her death.

       If the State proves beyond a reasonable doubt that
       [defendant], or someone acting in concert with him, inten-
       tionally inflicted a wound upon Ms. Shelton that proxi-
       mately caused her death, you may infer, first, that the
       killing was unlawful, and second, that it was done with
       malice, but you are not compelled to do so.

       You may consider the inferences, along with all other facts
       and circumstances, in determining whether the killing was

STATE v. JOHNSON

[196 N.C. App. 330 (2009)]

> unlawful and done with malice. If it was unlawful and done with malice, [defendant] would be guilty of second-degree murder.

(Emphasis added). Once the jury was excused, the trial court addressed counsel for both the State and defendant.

Court: [A]s to what I've told them so far, any objections, corrections or additions to the charge as given? Its a complicated charge, so if I did not say it right just let me know.

State: None from the State, Your Honor.

Defense: Not from the defense.

For the deaths of Bobby Handy and Regina Shelton, the jury found defendant guilty of two counts of second degree murder. The trial court entered judgments in accordance with the jury's verdicts and committed defendant to two consecutive terms of 264 to 326 months in the custody of the North Carolina Department of Correction. Defendant appeals.

---

On appeal, defendant raises the following two questions: (I) Did the trial court commit plain error in instructing the jury on second degree murder; and (II) did the trial court commit reversible error in sentencing defendant.

*I*

[1] First, defendant argues that the trial court committed plain error in instructing the jury on the charge of second degree murder as it pertained to Regina Shelton. Defendant argues that the trial court failed to require that the jury find that "[defendant], acting alone or together with others, intentionally and with malice wounded Ms. Shelton *with a deadly weapon . . . .*" (Emphasis added). We disagree.

When reviewing jury instructions, our Supreme Court has stated the following:

> The charge of the [trial] court must be read as a whole . . . . It will be construed contextually, and isolated portions will not be held prejudicial when the charge as a whole is correct. If the charge presents the law fairly and clearly to the jury, the fact that some expressions, standing alone, might be considered erroneous will afford no ground for reversal.

*State v. Hooks*, 353 N.C. 629, 634, 548 S.E.2d 501, 505 (2001) (internal and external citations omitted). "Under a plain error analysis, defendant is entitled to a new trial only if the error was so fundamental that, absent the error, the jury probably would have reached a different result." *Id.* at 633, 548 S.E.2d at 505 (citation omitted).

"Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation." *State v. Leazer*, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (citation omitted).

Here, the trial court defined second degree murder as "the unlawful killing of a human being with malice, but without premeditation and deliberation." Malice was described as follows:

If the State proves beyond a reasonable doubt that [defendant], or someone acting in concert with him, intentionally killed Ms. Shelton with a deadly weapon or intentionally inflicted a wound upon Ms. Shelton with a deadly weapon, and that that proximately caused Ms. Shelton's death, then you may infer that the killing was unlawful and that it was done with malice, but you are not compelled to do so.

. . .

Hands or other body parts can be a deadly weapon under some circumstances, as can ordinarily household items, such as irons or telephones, but whether such items or body parts are used as deadly weapons, alone or in conjunction with each other, in this case is a factual question to be determined by you in light of all the evidence and circumstances you find.

The trial court stated that "[i]n order for you to find [defendant] guilty of second-degree murder, the State must prove beyond a reasonable doubt that [defendant], or someone acting in concert with him, intentionally and *with malice wounded Ms. Shelton* and thereby proximately caused her death." (Emphasis added). The trial court then recapped its second degree murder instruction with the following statement:

So[,] if you find from the evidence beyond a reasonable doubt that on or about December 19th, 2003 [defendant], acting alone or together with others, intentionally and *with malice wounded Ms. Shelton with a deadly weapon* and that this proximately caused

her death, it would be your duty to return a verdict of guilty of second-degree murder.

(Emphasis added).

Furthermore, the trial court also instructed the jury on the charges against defendant as they pertained to Bobby Handy.

For you to find [defendant] guilty of second degree murder the State must prove beyond a reasonable doubt that [defendant], or someone acting in concert with him, unlawfully, intentionally and *with malice wounded Mr. Handy with a deadly weapon*, thereby proximately causing his death . . . .

(Emphasis added). Also, in recapping its instructions on second degree murder, the trial court stated the following:

If you find from the evidence beyond a reasonable doubt that on or about December 19th of 2003 [defendant], acting by himself or together with others, intentionally and *with malice . . . wounded Mr. Handy with a deadly weapon*, thereby proximately causing Mr. Handy's death, it would be your duty to return a verdict of guilty to second-degree murder.

(Emphasis added).

We hold that the trial court's lapse in stating "with a deadly weapon" when describing the State's theory as to the element of malice did not prejudice defendant. *See State v. Perez*, 182 N.C. App. 294, 300, 641 S.E.2d 844, 849 (2007) (holding that where the charge viewed as a whole, contextually leaves no reasonable cause to believe the jury was misled there was no prejudicial error). Accordingly, this assignment of error is overruled.

*II*

[2] Next, defendant argues the trial court erred in failing to find substantial and uncontested mitigating factors prior to sentencing and he is entitled to a new sentencing hearing wherein his mitigating evidence will be reconsidered. We disagree.

Prior to imposing a sentence other than the presumptive term for a particular offense, the trial court is required to consider the statutory list of aggravating and mitigating sentencing factors listed in N.C.G.S. § 15A-1340.16 [], to make written findings of fact concerning the factors, and to determine whether one set outweighs the other or whether they are counterbalanced.

*State v. Hilbert*, 145 N.C. App. 440, 442, 549 S.E.2d 882, 884 (2001) (citation omitted). "A sentencing judge must find a statutory mitigating sentence factor if it is supported by a preponderance of the evidence. A mitigating factor is proven when the evidence is substantial, uncontradicted, and there is no reason to doubt its credibility." *State v. Kemp*, 153 N.C. App. 231, 241, 569 S.E.2d 717, 723 (2002) (internal citations omitted). "A trial judge is given wide latitude in determining the existence of . . . mitigating factors, and the trial court's failure to find a mitigating factor is error only when no other reasonable inferences can be drawn from the evidence." *State v. Norman*, 151 N.C. App. 100, 105-06, 564 S.E.2d 630, 634 (2002) (citation omitted).

Here, defendant asked the trial court to find the following statutory mitigating factors:

1) [T]hat the defendant was suffering from a mental or physical condition that was insufficient to constitute a defense, but significantly reduced his culpability for the offense;

2) [T]hat the defendant's age or immaturity significantly reduced his culpability for the act;

3) [T]hat the defendant acted under strong provocation;

4) [T]hat the defendant has a good treatment prognosis.

The trial court found only one statutory mitigating factor, that "defendant's age, or immaturity, at the time of the commission of the offense significantly reduced the defendant's culpability for the offense."

Defendant states that his youth and home life "were abysmal" and that he has been diagnosed with mental health issues such as attention deficit disorder, conduct disorder, and adjustment disorder; however, we hold it was within the trial court's discretion to determine that such conditions did not significantly reduce defendant's culpability.

Evidence was also presented on the issue of defendant's redeemability. Dr. Jerry Noble, an expert in clinical psychology, testified that he thought there was hope for defendant, that he was redeemable given a structured setting and resources such as are available in the Department of Correction. On such evidence, we hold the trial court was within its discretion to determine that defendant did not have a good treatment prognosis. Accordingly, this assignment of error is overruled.

Further, we hold defendant's argument that he acted under strong provocation to be without merit.

No error.

Judges McGEE and GEER concur.